[No. 21435-4-III. Division Three. May 8, 2003.]

ANGELA D. JOHNSON, *Respondent*, v. THE CASH STORE, *Appellant*.

---

[15] 143 Wn.2d 1, 17 P.3d 591 (2001).

834

*Brad E. Smith* (of *Huppin Ewing Anderson & Paul, P.S.*) (*Michael Fitzpatrick* of *Brennan, Steil, Basting & Mac-Dougall*, of counsel), for appellant.

*Alan L. McNeil*, for respondent.

SCHULTHEIS, J. — Under Washington law, a company in the business of making small loans may advance up to $500 on the security of a postdated check, as long as the date of the postdated check is no more than 31 days after the date of the loan. RCW 31.45.010(4), .073(3). These so-called "pay-

day loans" may be subject to interest or fees of up to 15 percent of the principal amount borrowed. RCW 31.45-.073(2).

The Cash Store, also known as Cottonwood Financial, Ltd., loaned Angela Johnson $500. In exchange, Ms. Johnson gave Cash Store a check postdated two weeks later for $575, including a $75 "Finance Charge." Clerk's Papers (CP) at 12. When Ms. Johnson was unable to pay the entire amount two weeks later, Cash Store offered to keep the $75 finance charge and to draw up a second loan agreement for $575 with a second postdated check due two weeks later. Ms. Johnson repeated this process 14 times over the next seven months. Following a stop payment on the last post-dated check, and alleged threats from Cash Store that it would bring criminal charges, Ms. Johnson finally paid off the loan. She then filed a complaint against Cash Store for unconscionability and violations of the Consumer Protection Act, chapter 19.86 RCW. Although the summons and complaint were served on the manager, Cash Store did not answer or appear. Consequently, Ms. Johnson obtained a default judgment. Cash Store's motion to vacate the judgment was denied.

On appeal, Cash Store contends vacation of the default judgment is appropriate under CR 60(b) because it presented at least a prima facie defense to Ms. Johnson's causes of action and its failure to respond was due to excusable neglect. Cash Store also contends the trial court erred in its computation of damages. We find that Cash Store's failure to appear was inexcusable. Further, we find that it failed to present a strong prima facie defense to Ms. Johnson's claims or to her request for damages. Consequently, we affirm.

FACTS

Cottonwood Financial, Ltd. is a Texas limited partnership licensed to do business in Washington as The Cash Store. Ms. Johnson was a single mother working as a

manager for Jack in the Box in January 2000. Because she had paid a $300 veterinarian bill for treatment of her daughter's cat, she found that she needed additional money to pay bills that month. Ms. Johnson went to Cash Store on January 4 and requested a $250 loan. A Cash Store employee reportedly told her she would get a better finance rate for a $500 loan and she agreed to the greater amount. The "CONSUMER LOAN AGREEMENT" signed by Ms. Johnson set out the following disclosures: the amount paid to Ms. Johnson was $500; the annual percentage rate was 608.33 percent; the finance charge was $75; the amount financed was $500; and the total payment of $575 was due two weeks later. CP at 12. Ms. Johnson's postdated check for $575 was security for the loan. The agreement also informed her that if she paid the loan in full before the due date, she would be charged a prepayment penalty equal to the difference between the finance charge and the interest accrued through the prepayment date.

Ms. Johnson realized she would not be able to pay $575 on the date it was due. The Cash Store employee reportedly told her to come in on the due date with $575 in cash and the store would roll the loan over. On January 13, Ms. Johnson went to Cash Store with $575 in cash, an employee took her money, gave her back the postdated check, and wrote a new consumer loan agreement. Ms. Johnson signed the new agreement, wrote a new check postdated two weeks later, and the Cash Store employee handed back the $500 in cash, keeping $75. This process was repeated 14 more times, with Ms. Johnson paying $75 each time.

By August 2000, Ms. Johnson had paid more than $1,100 in interest on a $500 loan that she still owed in its entirety. Although she had suffered from mild depression before receiving the loan, her symptoms had worsened as her financial situation became more hopeless. She stopped payment on the August postdated check to Cash Store. Subsequently, Cash Store employees allegedly left frequent telephone messages requesting payment. Ms. Johnson finally accepted a telephone call from a Cash Store employee

in October 2000. This employee reportedly told her that if she did not pay the $575 and a returned check fee of $25, the matter would be turned over to the police, who would issue a warrant for her arrest. Ms. Johnson allowed her trailer to go into foreclosure, moved in with her father, and paid Cash Store $600 by November 2000. She now owes over $20,000 for the deficiency on the foreclosure.

On November 13, 2001, Ms. Johnson filed a summons and complaint against Cash Store alleging unconscionability and Consumer Protection Act (CPA) violations in the making and enforcing of the loan terms, including usurious interest rates against public policy and unfair business practices in the form of harassment. That same day, a process server personally served the summons and complaint on Laura Fish, manager of the North Pines Road Cash Store in Spokane. Ms. Fish sent the summons and complaint back to Ms. Johnson's counsel in separate envelopes on November 15. In each envelope she attached a note stating that Ms. Johnson's debts were paid off in November 2000.

When Cash Store failed to appear or respond, Ms. Johnson filed a notice of intent to file for default judgment on December 19, 2001. This notice was mailed to the North Pines Road Cash Store and stated that the hearing on the motion for default judgment would be held on December 27, 2001 at 10 A.M. in the ex parte courtroom. The hearing was held and an order of default was entered on December 27. Cash Store did not appear.

Ms. Johnson's motion to set a hearing for damages was not sent to Cash Store.[1] At the hearing on damages held January 25, 2002, Ms. Johnson requested treble damages for the total amount paid to Cash Store (3 x $1,740 = $5,220), plus $42,000 for emotional distress (twice the value of the foreclosure costs), and attorney fees and costs. The trial court found the treble damages and attorney fees reasonable and awarded them, adjusted by a slightly lower

---

[1] Cash Store does not contend that notice of this hearing was required.

rate. Noting that Ms. Johnson's depression was ongoing, the court limited her recovery for emotional distress to $15,000. The total judgment was $26,701.

On June 19, 2002, Ms. Johnson served a writ of garnishment on U.S. Bank to satisfy Cash Store's indebtedness, now equal to $27,739. Three weeks later, Cash Store filed a motion to vacate the default judgment. In the memorandum supporting the motion, Cash Store argued that its failure to respond was a mistake or excusable neglect due to its manager's inattention. It also asserted that its short-term loan operation complies with Washington law and is approved by the state Department of Financial Institutions (DFI). Cash Store attached affidavits from Ms. Fish and from Trevor Ahlberg, Cottonwood's chief executive officer (CEO). Mr. Ahlberg stated that the Washington Cash Stores had been audited in August and September 2000 by the DFI, which found no significant violations of state law. He also asserted that Cash Store had no policy to harass its clients or to threaten criminal sanctions.

Finding that Cash Store failed to establish a prima facie defense to the underlying action and further finding that its failure to appear was not due to excusable neglect or a mistake, the trial court denied Cash Store's motion to vacate the default judgment. The court also amended the order of judgment to add additional attorney fees for Ms. Johnson. Cash Store now appeals the order denying its motion to vacate judgment and the award of damages.

DEFAULT JUDGMENT

■ Any discussion of default judgments begins with the proposition that they are not favored in the law. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). The overriding policy is that controversies should be determined on their merits, not by default. *Id.* (quoting *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)). On the other hand, the need for a responsive and responsible legal system mandates that parties comply with a

judicial summons. *Id.*; *Norton v. Brown*, 99 Wn. App. 118, 123, 992 P.2d 1019, 3 P.3d 207 (1999). In determining whether a default judgment should be vacated, the court applies equitable principles to ensure that substantial rights are preserved and justice is done. *Griggs*, 92 Wn.2d at 581-82; *Norton*, 99 Wn. App. at 123. Justice is not done if hurried defaults are allowed, but neither is it done if continuing delays are permitted. *Griggs*, 92 Wn.2d at 582.

A motion to vacate a default judgment pursuant to CR 60(b) is addressed to the sound discretion of the trial court.[2] *Id.* In deciding a motion to vacate, the court addresses two primary and two secondary factors that must be shown by the moving party: (1) that there is substantial evidence to support at least a prima facie defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the moving party acted with due diligence after notice of the default judgment; and (4) that the opposing party will not suffer substantial hardship if the default judgment is vacated. *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968); *Norton*, 99 Wn. App. at 123-24. Establishment of the first factor avoids a useless subsequent trial. *Griggs*, 92 Wn.2d at 583. The trial court examines the evidence and reasonable inferences in the light most favorable to the moving party to determine whether there is substantial evidence of a prima facie defense. *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000). If a "strong or virtually conclusive defense" is demonstrated, the court will spend little time inquiring into the reasons for the failure to appear and answer, provided the moving party timely moved to vacate and the failure to appear was not willful. *White*, 73 Wn.2d at 352; *Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson*, 95

---

[2] The rule provides that a court may relieve a party from final judgment for enumerated reasons, including "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(1). The motion for relief of judgment must be made within one year after the judgment if based on the reasons stated in CR 60(b)(1). CR 60(b).

Wn. App. 231, 242, 974 P.2d 1275 (1999). However, when the moving party's evidence supports no more than a prima facie defense, the reasons for the failure to timely appear will be scrutinized with greater care. *White*, 73 Wn.2d at 352-53.

The two secondary factors addressed in a motion to vacate are met here. Cash Store filed a motion to vacate the default judgment less than a month after it received notice of the writ of garnishment. Assuming this notice was the first to reach upper administration, we find that Cash Store acted with due diligence after notice of the default judgment. Addressing the prejudice factor, Ms. Johnson argued only that vacation of the judgment would prolong her dependence on her family and would "unnecessarily . . . draw out a very painful, humiliating and distressing experience." CP at 75. While delay in the proceedings is one of the evils addressed by the motion for default judgment, *Griggs*, 92 Wn.2d at 582 (quoting *Widucus v. S.W. Elec. Coop., Inc.*, 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)), vacation of a default judgment inequitably obtained cannot be said to substantially prejudice the nonmoving party merely because the resulting trial delays resolution on the merits. Ms. Johnson fails to establish that she will suffer substantial hardship if the default judgment is vacated.

Consequently, the dispositive factors in the trial court's decision to deny the motion to vacate are (1) the evidence to support at least a prima facie defense and (2) whether Cash Store's failure to appear was due to excusable neglect. We will examine the propriety of the trial court's decision in both the order of default and the judgment awarding damages.

I. Order of default. Cash Store contends it presented substantial evidence of a strong defense to Ms. Johnson's claims. The first of these claims was a cause of action for unconscionability. Ms. Johnson alleged in her complaint that the consumer loan agreements she signed were so one-sided as to be unconscionable on their faces.

Washington courts recognize two kinds of unconscionability: substantive and procedural. *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898, 28 P.3d 823 (2001). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract." *State v. Brown*, 92 Wn. App. 586, 601, 965 P.2d 1102 (1998). A contract or term is substantively unconscionable if it shocks the conscience, is " 'monstrously harsh,' " or is " 'exceedingly calloused.' " *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995) (quoting *Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention*, 16 Wn. App. 439, 444, 556 P.2d 552 (1976)). An example of a substantively unconscionable agreement is the mandatory arbitration clause cited in *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 587, 998 P.2d 305 (2000) (citing *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254, 676 N.Y.S.2d 569 (1998)), which required the use of a French arbitration company, payment of a nonrefundable advance fee and travel fees, and payment of the loser's attorney fees. Procedural unconscionability concerns the lack of a meaningful choice under the circumstances surrounding the transaction, including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the contract's terms, and whether those terms were hidden in a maze of fine print. *Mortenson*, 140 Wn.2d at 588 (quoting *Nelson*, 127 Wn.2d at 131).

Ms. Johnson alleged in her first cause of action that the consumer loan agreements were so one-sided as to amount to an absence of meaningful choice. She also alleged that the terms were unreasonably favorable to Cash Store, that she had absolutely no bargaining power, and that she did not understand the significance of the unconscionable terms. These allegations relate to procedural unconscionability. *See Nelson*, 127 Wn.2d at 131. Additionally, Ms. Johnson's allegations of exorbitant percentage rates could

also support a claim of procedural unconscionability. *Id.* at 132 (courts have held that grossly excessive prices render contracts unconscionable). In its motion to vacate, Cash Store offered the following defenses to unconscionability: (1) its short-term loan operation has been specifically approved by the DFI and (2) its loan procedures have been consistently upheld in other jurisdictions. Affidavits by Mr. Ahlberg, Cash Store's CEO, state that Cash Store has worked closely with the DFI to make sure that its loan procedures comply with the state's regulations and with chapter 31.45 RCW, the statute authorizing small loans at higher interest rates.

Pursuant to RCW 31.45.073(3), a company engaged in the business of making small loans may advance money on the security of a postdated check, provided the time period between the date the loan is granted and the date of the postdated check does not exceed 31 days. A small loan is a loan up to $500 loaned for a period of 31 days or less. RCW 31.45.010(4). The loan company may charge interest or fees for small loans up to 15 percent (in the aggregate) of the principal amount borrowed. RCW 31.45.073(2). According to a report issued by the DFI after a 2000 audit of several Cash Stores in the state, Cash Store's loans complied with state and federal rules for disclosure of loan origination fees, the amount financed, the finance charge, and the annual percentage rate. Further, the report found that all the loan rates charged complied with chapter 31.45 RCW. The question before the trial court and this court is whether the DFI's findings provide a defense to Ms. Johnson's claim of unconscionability.

One of the criticisms aimed at the so-called payday loan business is that in requiring payment of the loan in full, without partial payments to reduce the principal, payday lenders trap consumers "in a vicious cycle of indebtedness." Creola Johnson, *Payday Loans: Shrewd Business or Predatory Lending?*, 87 MINN. L. REV. 1, 4 (2002). Typically, payday loan customers are unable to pay off the entire indebtedness by the loan's due date and have to "roll over"

the loan. *Id.* at 56. To roll over a loan is "to refinance a maturing obligation . . . by offering a new obligation of the same type in exchange." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1969 (1993).

In Washington, WAC 208-630-085(2)(a) prohibits the classic form of rollover for chapter 31.45 RCW small loans: "No loan made under this act shall be repaid by proceeds of another loan made under chapter 31.45 RCW by the same lender or affiliate. The proceeds from any loan made under this act shall not be applied to any other loan from the same lender or affiliate."[3] In an attempt to comply with this regulation, Cash Store requires its customers to "pay off" each loan with cash that is promptly returned to the customer when he or she pays the finance fee for the original loan, signs a new consumer loan agreement, and writes out a new postdated check. CP at 93. Labeling rollovers as new loans is common in the payday loan industry. Johnson, *supra*, at 70. By paying back the loan and immediately taking out a new loan for the same amount, the consumer enters a debt treadmill, where the loan is nonamortizing and payment of a finance fee every two weeks is necessary to prevent a default. *Id.* at 59. The payday loan industry maintains that the risk of default is high and justifies exorbitant finance fees. However, "because the rollover practice is part of its business model, the risk of losing capital decreases over time." *Id.* at 70-71.

Mr. Ahlberg's affidavits and the report compiled by the DFI do not address Cash Store's policy of renewing Ms. Johnson's loan every two weeks for a 15 percent finance fee. In fact, this evidence does not specifically address Ms. Johnson's allegations that she lacked a meaningful choice in the terms of the contract and that she did not understand

---

[3] Washington has a history of repugnance toward rollovers and other practices of money lenders: " 'The loan shark has no regard for the disastrous economic effect of his illegally high rates or of his constant attempt to keep borrowers in debt by encouraging renewals, and by making difficult the payment of the principal of the obligation.' " *Fin. Commerce, Inc. v. McLean*, 73 Wn.2d 52, 53 n.1, 435 P.2d 932 (1968) (quoting STEWART LYNCH, PROSECUTING THE AUTOMOBILE LOAN SHARK UNDER THE FEDERAL MAIL FRAUD STATUTE (Conference on Personal Finance Law, 1945)).

the true ramifications of entering into an agreement that required payment in full—or unlimited renewals of the debt—for a 15 percent fee every two weeks. Cash Store insists that the fact that the DFI found Cash Store's small loans compliant with the disclosure and interest rate requirements of chapter 31.45 RCW supports a prima facie defense against Ms. Johnson's claim of unconscionability. The general nature of this evidence, however, does not support a "strong or virtually conclusive defense" to the specific acts of unconscionability alleged in Ms. Johnson's complaint. *White*, 73 Wn.2d at 352.

Ms. Johnson's second cause of action was for violation of the CPA, chapter 19.86 RCW. To establish a violation of the CPA, a plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) that impacts the public interest, and (4) proximately causes injury to the plaintiff in his or her business or property. *Delgado Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 917, 32 P.3d 250 (2001). Ms. Johnson alleged that Cash Store's annual percentage rate of between 322 and 608 percent was usurious and an unfair practice for the purposes of the CPA. She also claimed that an agent of Cash Store conducted an unfair business practice by threatening her with criminal prosecution.

Any violation of chapter 31.45 RCW substantially affects the public interest and is an unfair and deceptive practice for the purposes of the CPA. RCW 31.45.190; RCW 19-.86.020. Ms. Johnson claimed that Cash Store violated RCW 31.45.073(2) by, in effect, charging interest far exceeding 15 percent of the principal by renewing the loan every two weeks for an additional finance fee. Cash Store's defense to this allegation was limited to its insistence that its payday loans comply with the relevant statutes and were approved by the DFI. In response to Ms. Johnson's claim that she was threatened with criminal prosecution, Cash Store's CEO, Mr. Ahlberg, stated that his company has never had a policy or procedure to threaten customers with criminal sanctions when they fall behind on payments.

He added, "the evidence will show that The Cash Store did not harass, humiliate or make criminal threats to Ms. Johnson as alleged in the complaint." CP at 47. Ms. Fish, the Pines Road Cash Store's manager, also reported no policy to harass customers.

■ To establish a prima facie defense, the affidavits submitted to support vacation of a default judgment must precisely set out the facts or errors constituting a defense and cannot rely merely on allegations and conclusions. *Shepard*, 95 Wn. App. at 239; *see also* CR 60(e)(1). Mr. Ahlberg stated that he had "no way of verifying" who allegedly made harassing comments to Ms. Johnson, and that discovery was necessary to address this issue. CP at 83. On the contrary, Cash Store held the keys to its own defense. Ms. Johnson alleged that an unidentified male Cash Store employee called her at the end of October 2000. Cash Store could have submitted affidavits from the male employees working during this time period at its Pines Road store. Any discovery needed was within its own organization. At best, Cash Store presented sufficient evidence of a prima facie defense solely to the claim that its loans violate RCW 31.45.073 and the CPA.

The trial court found that Cash Store had not presented a prima facie defense to Ms. Johnson's complaint. Considering the fact that Cash Store's consumer loan agreements appear to comply with RCW 31.45.073 on their faces, we find that the trial court based this aspect of its decision on untenable grounds. *See Hwang v. McMahill*, 103 Wn. App. 945, 949-50, 15 P.3d 172 (2000). Consequently, we must next examine Cash Store's reasons for failing to appear and answer. *White*, 73 Wn.2d at 352-53.

In her affidavit in support of the motion to vacate the default judgment, Ms. Fish stated that she received the summons and complaint on November 13, 2001. Because the only legal documents she had ever received were bankruptcy notices from customers, she claimed she was not familiar with the documents associated with lawsuits. After briefly reviewing the document headings, she as-

sumed they related to a bankruptcy. She reported that she called Ms. Johnson's attorney's office, but could not remember whether she talked to anyone. She then sent back the summons and complaint in separate envelopes, each with a note attached explaining that Ms. Johnson was no longer a customer and had paid her balance in full. Because she thought the documents were irrelevant to Cash Store business, she explained, she never informed the company's administration or its legal counsel that she had received them. Ms. Fish failed to mention why she did not respond to the notice of the default hearing and the record does not indicate what she did with that notice.

■■■■■ Generally a default judgment is proper "when the adversary process has been halted because of an essentially unresponsive party." *Norton*, 99 Wn. App. at 126. If a company fails to respond to a complaint because someone other than general counsel accepted service of process and then neglected to forward the complaint, the company's failure to respond is deemed due to inexcusable neglect. *Prest v. Am. Bankers Life Assurance Co.*, 79 Wn. App. 93, 100, 900 P.2d 595 (1995). Cash Store has never argued that service was improperly made on Ms. Fish, the store manager. *See* RCW 4.28.080(10) (service of process on "any agent" of a foreign corporation doing business in this state). Ms. Fish admitted that she read at least some portion of both the summons and complaint documents. The heading on the complaint clearly stated "COMPLAINT FOR DAMAGES" and paragraph 1.2 on that page alleged that Cash Store "is engaged in the business of regularly extending consumer credit at an outrageous interest rate to low income, unsophisticated and desperate individuals." CP at 3. Anyone as familiar with bankruptcy documents as Ms. Fish claimed to be would recognize immediately that Ms. Johnson's complaint did not concern bankruptcy proceedings.

Ms. Fish's failure to forward the summons and complaint to corporate counsel or to the Cottonwood administration— and her unexplained failure to forward the notice of a

default hearing—constituted at least inexcusable neglect, if not willful noncompliance. *See Commercial Courier Serv., Inc. v. Miller*, 13 Wn. App. 98, 105-07, 533 P.2d 852 (1975) (defendant disregarded summons because he thought it was only a bluff). Because Cash Store failed to establish more than a prima facie defense to Ms. Johnson's claims and did not satisfy its burden of demonstrating that its failure to appear and answer was occasioned by mistake, inadvertence, surprise, or excusable neglect, the trial court did not abuse its discretion in denying the motion to vacate the default judgment.

■■■ II. Damages. We apply the same standard of review for the trial court's denial of the motion to vacate the damages award, and will not overturn the trial court's decision unless we find a clear abuse of discretion. *Calhoun v. Merritt*, 46 Wn. App. 616, 619-20, 731 P.2d 1094 (1986). The trial court awarded Ms. Johnson three times the amount she paid to Cash Store for her seven months of loan renewals, finding that these damages were appropriate under the CPA, RCW 19.86.090. Additionally, the trial court awarded $15,000 for emotional distress and $6,500 for attorney fees and costs. Cash Store challenged these damages as improper under the law.

■■■ Damages for emotional distress are not recoverable for a violation of the CPA. *White River Estates v. Hiltbruner*, 134 Wn.2d 761, 765 n.1, 953 P.2d 796 (1998); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993). The plaintiff who is successful on a CPA claim is entitled to actual damages and to the attorney fees and costs related to the CPA claim. RCW 19.86.090; *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 566, 825 P.2d 714 (1992). Damages for emotional distress are generally limited to claims for intentional torts. *White River*, 134 Wn.2d at 766.

■■■ For the first time on appeal, Cash Store contends there is no basis for the damages awarded for emotional distress. It contends the trial court improperly awarded emotional distress damages for the CPA violation. In its

motion to vacate the default judgment, Cash Store merely argued that these damages were based on hearsay documents and that it needed discovery to determine what other circumstances might have caused Ms. Johnson's emotional distress. Even examined in the light most favorable to Cash Store, the arguments before the trial court did not rise above mere allegations and conclusions; they did not set out specific facts or errors constituting a prima facie defense. *Shepard*, 95 Wn. App. at 239. Consequently, the trial court did not err in finding that Cash Store did not present a prima facie defense to the award of damages.

 Moreover, the award is supported by the record. True, Ms. Johnson did not specifically include in her complaint a cause of action for an intentional tort. However, the findings of fact and conclusions of law supporting the default judgment include a finding that Ms. Johnson suffered emotional distress due to Cash Store's intentional and unconscionable conduct in threatening her with arrest, and a conclusion that Cash Store's intentional and unconscionable conduct aggravated her preexisting depression and insomnia. In her memorandum in opposition to Cash Store's motion to vacate the default judgment, Ms. Johnson argued that Cash Store raised no defense to the damages incurred due to its intentional infliction of emotional distress. Because such damages are recoverable under a theory of intentional infliction of emotional distress, *Rice v. Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987), and because Cash Store raised no prima facie defense to this award, the trial court properly denied the motion to vacate the damages award.

## ATTORNEY FEES

 Ms. Johnson requests attorney fees on appeal pursuant to RCW 26.18.160. Because this statute authorizes reasonable attorney fees and costs only in "any action to enforce a support or maintenance order under this chapter," RCW 26.18.160, it is not applicable to this case. RAP 18.1(b)

requires a party to devote a section of his or her brief to the request for fees. In the prayer for relief in her respondent brief's conclusion, Ms. Johnson stated that she respectfully asked the court to "1) affirm the trial court's judgment awarding Ms. Johnson $26,701, plus the statutory interest; 2) affirm the trial court's award of additional attorney fees, plus the statutory interest; and 3) award the Respondent reasonable costs and attorney fees pursuant to RCW 26.18.160." Br. of Resp't at 23-24. Mere inclusion of a request for fees and costs in the last line of the conclusion in a brief is not sufficient under RAP 18.1(b). *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998). Consequently, Ms. Johnson is not entitled to attorney fees on appeal.

Affirmed.

BROWN, C.J., and KURTZ, J., concur.

Review denied at 150 Wn.2d 1020 (2003).