177 P.3d 1147 (2008)
SACOTTE CONSTRUCTION, INC., Appellant,
v.
NATIONAL FIRE & MARINE INSUANCE COMPANY, a foreign insurance company, Respondent.
Scottsdale Insurance Company, a foreign insurance company; American States Insurance Company, a Washington insurance company; One Beacon Insur. ance Company f/k/a General Accident Insurance Company; a foreign insurance company; Zurich American Insurance Company, a foreign insurance company; Interstate Fire & Casualty, a foreign insurance company; American Safety Indemnity Company, a foreign insurance company; Hartford Casualty Insurance Company, a foreign insurance company; and Maryland Casualty Company, a foreign insurance company, Defendants.
No. 59777-9-I.
Court of Appeals of Washington, Division 1.
February 25, 2008.
*1148 Alfred E. Donohue, Dennis Smith, David Michael Jacobi, Wilson, Smith, Cochran & Dickerson, Seattle, WA, for Appellant.
Jennifer Diana Loynd, Attorney at Law, Joanne Thomas Blackburn, Jackson & Wallace, Anthony L. Rafel, Robert Aloysius Hyde, Rafel Law Group PLLC, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 National Fire & Marine Insurance Company (NFM) appeals from an order denying a motion to vacate default judgment entered against it without notice. Because NFM substantially complied with the appearance *1149 requirements, it was entitled to notice. We reverse.

FACTS
¶ 2 NFM insured Bellows Construction (Bellows), a subcontractor that applied waterproof coating on decks at the Heights at Issaquah Ridge (Issaquah Ridge) condominium project. The Issaquah Ridge homeowners sued the developer, Derus Wakefield, who in turn sued the general contractor, Sacotte Construction, Inc. (Sacotte), for construction defects.
¶3 Sacotte tendered its defense to its subcontractors' insurance companies, including NFM, claiming it was an additional insured under the policies. NFM and others failed to respond to the tender. Sacotte then sued the insurance companies for failure to defend. Although NFM's coverage counsel contacted Sacotte's counsel to enter an informal appearance, Sacotte obtained a default judgment against NFM without notice. NFM appeals the trial court's order denying its motion to vacate default judgment and the order denying its motion for a hearing prior to entry of a money judgment.
¶ 4 Jarret Sale of the law firm Bullivant Houser Bailey (BHB) has represented NFM in coverage litigation on several occasions. From 2005 to 2006, BHB represented NFM in Overlook Condominiums,[1] an insurance coverage action brought by Sacotte. While that litigation was still ongoing, Greg Harper, counsel for Sacotte, asked Sale if BHB would represent Sacotte in a construction defect suit, Issaquah Heights.[2] Because Sacotte and NFM were directly opposed in Overlook Condominiums, Sale needed to obtain a conflict of interest waiver from NFM in order to represent Sacotte in Issaquah Heights. In his letter to NFM requesting a waiver, Sale told NFM that BHB would not take any position regarding coverage for Sacotte's subcontractors, and thus BHB would not take a coverage position adverse to NFM's interest. NFM signed the waiver allowing Sale to represent Sacotte in Issaquah Heights.
¶ 5 Less than one month after NFM signed the waiver, Sacotte served the insurance commissioner with the summons and complaint in this action for failure to defend. Not realizing that it was the same matter for which it had waived a conflict of interest, NFM forwarded the complaint to its coverage counsel, Jarrett Sale. To prevent a default from being entered against NFM without notice, Sale called Harper on or about June 1, 2006, to enter an informal appearance for NFM. Sale sent two emails to NFM to confirm that, although he ultimately would not represent NFM in this matter due to the conflict of interest regarding Sacotte, he had informally appeared on its behalf and default could not be entered without notice.
¶ 6 Nevertheless, Sacotte moved for an order of default on June 8, 2006, just one week after Sale had called Sacotte's counsel, without giving notice to NFM or Sale. On September 13, 2006, Sacotte presented findings of fact, conclusions of law, and default judgment to a commissioner in the King County Superior Court ex parte department. The findings, conclusions, and judgment were entered, as proposed. The judgment held NFM liable for the entire project, although it had insured only the scope of work performed by Bellows. And although the judgment purported to be "final," it awarded Sacotte "monetary relief in a total amount to be determined."
¶ 7 The trial court denied NFM's motion to vacate the default judgment.

DISCUSSION
¶ 8 Washington courts favor resolving cases on their merits over default judgments.[3] Our courts "will liberally set aside default judgments pursuant to CR 55(c) and CR 60 and for equitable reasons in the interests of fairness and justice."[4]
*1150 ¶ 9 CR 55(a)(3) requires that notice of a motion for default be given to any party who has appeared in the action for any purpose. A default judgment entered against a party who was entitled to notice will be set aside if notice was not given.[5] A party who substantially complies with the appearance requirement is entitled to notice.[6] We review the trial court's determination of whether a party has substantially complied for abuse of discretion.[7] Discretion is abused if the court's decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[8]
¶ 10 Sacotte argues that it was not required to give notice to NFM because NFM never appeared in this action. However, substantial compliance can be accomplished with an informal appearance if the party shows intent to defend and acknowledges the court's jurisdiction over the matter after the summons and complaint are filed.[9]
¶ 11 In a sworn affidavit, Sale testified that he made an informal telephonic appearance on NFM's behalf one week before Sacotte moved for an order of default. Sale made two contemporaneous written records of the phone call by emailing NFM to confirm that he had called Sacotte's counsel, Greg Harper, to enter an informal appearance on its behalf. The only evidence Sacotte presented tending to show that Sale did not enter an informal appearance for NFM was Harper's testimony that he did not "recall" Sale's telephone call. The only affirmative evidence in the record shows that NFM made an informal telephonic appearance after the lawsuit was filed. NFM substantially complied with the appearance requirements.
¶ 12 Sacotte argues that it was not required to give notice prior to default, even if Sale did call Harper to enter an informal appearance for NFM. We disagree.
¶ 13 First, Sacotte argues that a single phone call is insufficient to enter an informal appearance. However, the test for whether a party's conduct constitutes an informal appearance is not the number of contacts made by the party, but whether the party, after the suit has commenced, has shown intent to defend in court.[10] Sale's phone call was sufficient because it was made after the complaint was filed specifically to avoid default without notice, showing NFM's intent to defend. In a similar case, we recently held that one phone call, supported by a contemporaneous written record, constituted an informal appearance.[11]
¶ 14 Second, Sacotte argues that the phone call from Sale could not satisfy the appearance requirement because Sale had a non-waivable conflict of interest that prevented him from representing NFM. Division Two of this court has stated that a telephonic appearance must be made by "one who could appear for the defendant."[12] But when an attorney appears for a defendant, it is the defendant who has made the appearance, not the attorney.[13] Thus, the fact that Sacotte could have moved to disqualify Sale from representing NFM did not negate NFM's informal appearance.
¶ 15 In addition, because a proceeding to vacate a default judgment is equitable *1151 in character, "`a default judgment should be set aside if the plaintiff has done something that would render enforcing the judgment inequitable.'"[14] In June 2006, Harper knew that Sale represented NFM in other, similar matters. He and Sale were both working on the Overlake Condominiums litigation, in which Harper represented Sacotte and Sale represented NFM. In Old Republic National Title Ins. Co. v. Law Office of Robert E. Brandt, PLLC,[15] the attorney entering default similarly knew that the lawyer entering the informal appearance had previously represented the defendants.[16] Here, Harper not only knew that Sale had previously represented NFM but he also effectively prevented Sale from representing NFM in this action. Just three months earlier, Harper sought Sale's services for his own client and Sale agreed to represent Sacotte with NFM's consent. Harper attempted to take advantage of the conflict of interest that prevented Sale from representing NFM, a circumstance that he had a hand in creating. Under the circumstances of this case, it was inequitable for Harper to obtain default without notice to NFM.
¶ 16 As an attorney, Harper has a "duty as an officer of the court to use, but not abuse the judicial process."[17] This duty includes employing an acceptable level of professional courtesy to fellow attorneys and their clients. The courts have liberally construed the appearance requirements to allow them to be satisfied by substantial compliance.[18] If, as claimed, Harper had a policy of not accepting telephonic appearances, then it was his duty to make that clear to Sale or NFM, rather than to enter default judgment against it in an ex parte proceeding, with no notice. "[V]igorous advocacy is not contingent on lawyers being free to pursue litigation tactics that they cannot justify as legitimate.'"[19]
¶ 17 Moreover, even if NFM had failed to enter an informal appearance, it would be entitled to relief under CR 60(b)(1). When considering whether to vacate a default judgment, courts consider whether the default party has shown (1) that there is substantial evidence to support at least a prima facie defense to the claim asserted, (2) that its failure to appear was occasioned by mistake, inadvertence, surprise, excusable neglect, or that there was irregularity in obtaining the judgment, (3) that the party acted with due diligence after receiving notice that the default judgment was entered, and (4) whether substantial hardship would result to the plaintiff if the judgment were set aside[20] But the court will spend little time inquiring into the reasons for the failure to appear and answer if the moving party demonstrates "`a strong or virtually conclusive defense,'" the motion to vacate was timely, and the failure to appear was not willful.[21]
¶ 18 NFM made a strong defense when it argued, based on the language in the insurance policy, that Sacotte was not covered in the manner claimed. The policy limited Sacotte's coverage as an additional insured in several ways. The policy was limited to "ongoing operations," and therefore did not cover *1152 any work completed prior to or after the duration of Bellows' operations on the project. It excluded damages that occurred prior to the policy period. And finally, the policy was excess over all other available coverage. Because. NFM has demonstrated a strong defense, its motion to vacate was timely, and its failure to appear was not willful, NFM is entitled to relief under CR 60(b)(1).
¶ 19 The evidence shows that NFM made an informal telephonic appearance in this matter. NFM was entitled to notice prior to default, and therefore the trial court acted outside its authority by entering an order of default without notice in violation of CR 55(a)(3) and abused its discretion by denying NFM's motion to vacate default judgment. Alternatively, NFM is entitled to relief under CR 60(b)(1).
¶ 20 Because we hold that the default judgment must be vacated, we need not decide whether NFM was entitled to a hearing on damages prior to the entry of judgment. We note, however, that the trial court failed to conduct a reasonable inquiry into the amount of damages claimed prior to entering judgment.[22]
¶ 21 Sacotte's request for attorney fees and costs is denied.
¶ 22 Reversed and remanded for further proceedings.
WE CONCUR: ELLINGTON and GROSSE, JJ.
NOTES
[1] King County Superior Court Cause No. 05-2-23489-0.
[2] King County Superior Court Cause No. 05-2-17740-3.
[3] Morin v. Burris, 160 Wash.2d 745, 749, 161 P.3d 956 (2007).
[4] Morin, 160 Wash.2d at 749, 161 P.3d 956.
[5] Morin, 160 Wash.2d at 749, 161 P.3d 956 (citing Tiffin v. Hendricks, 44 Wash.2d 837, 847, 271 P.2d 683 (1954)).
[6] Morin, 160 Wash.2d at 749, 755, 161 P.3d 956.
[7] Morin, 160 Wash.2d at 753, 161 P.3d 956, Our Supreme Court expressly declined to adopt a substantial evidence standard. Morin, 160 Wash.2d at 753 n. 1, 161 P.3d 956.
[8] State ex rd. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
[9] Morin, 160 Wash.2d at 749, 161 P.3d 956.
[10] Morin, 160 Wash.2d at 749, 161 P.3d 956.
[11] Old Republic Nat'l Title Ins. Co. v. Law Office of Robert E. Brandt, PLLC, No, 58908-3-I, 2007 WL 4226714, at *2, 2007 Wash.App. LEXIS 3200, at *4-5 (Dec. 3, 2007).
[12] Seek Systems, Inc. v. Lincoln Moving/Global Van Lines, Inc., 63 Wash.App. 266, 270, 818 P.2d 618 (1991).
[13] Tiffin, 44 Wash.2d at 843, 271 P.2d 683.
[14] Old Republic National Title Ins. Co., No. 58908-3-1, 2007 WL 4226714, at *1, 2007 Wash. App. LEXIS 3200, at *3 (quoting Morin, 160 Wash.2d at 755, 161 P.3d 956).
[15] No. 58908-3-I, 2007 WL 4226714, 2007 Wash.App. LEXIS 3200 (Dec. 3, 2007).
[16] Old Republic National Title Ins. Co., No, 58908-3-I, 2007 WL 4226714, at *2 2007 Wash. App. LEXIS 3200, at *4.
[17] Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 354, 858 P.2d 1054 (1993).
[18] Morin, 160 Wash.2d at 755, 161 P.3d 956.
[19] Fisons, 122 Wash.2d at 354, 858 P.2d 1054 (quoting Schwarzer, Sanctions Under the New Federal Rule 11A Closer Look, 104 F.R.D. 181, 184 (1985)).
[20] TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wash.App. 191, 200-01, 165 P,3d 1271 (2007) (quoting White v. Holm, 73 Wash,2d 348, 352, 438 P.2d 581 (1968)).
[21] Johnson v. Cash Store, 116 Wash.App. 833, 841, 68 P.3d 1099 (2003) (quoting White, 73 Wash.2d at 352, 438 P.2d 581).
[22] See CR 55(b)(2); Smith v. Behr Process Corp., 113 Wash.App. 306, 333, 54 P.3d 665 (2002).