# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| EDWARD N. RIVAS, | No. 82948-3-I |
| Appellants, | |
| v. | ORDER GRANTING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| ROSEANNA RUSSELL, | |
| Respondent. | |

The respondent, Roseanna Russell, has filed a motion for reconsideration of the opinion filed on July 5, 2022. The court has determined that the motion should be granted, the opinion withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on July 5, 2022 is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_Andrus_, C.J.

_Chung_, J.          _Brennan_, J.

THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EDWARD N. RIVAS, | ) | No. 82948-3-I |
| | ) | |
| Appellants, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROSEANNA RUSSELL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ANDRUS, C.J. — Edward (Nick) Rivas appeals a trial court order denying his motion to vacate a default judgment. After the death of her longtime partner, Robert Baca, Roseanna Russell filed a complaint against Baca's estate and Baca's brother, Rivas, seeking a declaratory judgment that she and Baca shared a committed intimate relationship (CIR) entitling her to an equitable distribution of Baca's property, including Baca's interest in Rivas's home. Rivas evaded service of process and Russell obtained an order authorizing her to serve him via U.S. mail, certified mail, e-mail, and publication. When Rivas did not appear to defend the action, the trial court entered a default judgment against Rivas, finding that Baca and Rivas owned Rivas's property as equal tenants in common. Six months later, the trial court denied Rivas's motion to vacate the default judgment.

Citations and pin cites are based on the Westlaw online version of the cited material.

Because Rivas failed to establish a conclusive defense to Russell's CIR action, his failure to appear was not excusable, and he failed to exercise due diligence in responding to the default judgment, we affirm.

FACTS

This case is one of several involving the estate of Robert Baca (the Estate).[1] Roseanna Russell and Baca were in a committed intimate relationship for over twenty years, beginning around September 1994, and ending when Baca died in April 2017. Russell and Baca had lived together since 1995. In June 2008, Baca purchased 3709 S. 162nd Street (the 3709 Property) in SeaTac from the estate of his mother, Sadie Rivas. Baca and Russell lived on the 3709 Property from the time Baca purchased it. In July 2011, Baca, together with his brother, Edward (Nick) Rivas, purchased the property next door at 3713 S. 162nd St. (the 3713 Property), also from their mother's estate. Rivas has resided at the 3713 home since that time.

On April 8, 2017, Baca executed "The Robert L. Baca Revocable Living Trust" (the Trust), which provided a life estate for Russell in the 3709 Property, the mortgage and maintenance of which was to be funded by the Trust. Baca listed,

---

[1] Baca's Estate initiated a probate in King County Superior Court under Cause No. 17-4-03464-4. An appeal arising out of specific gifts Baca made to Russell and Rivas is pending before this court in no. 82684-1 and will be resolved by separate opinion. In addition, the Seattle City Employees' Retirement System (SCERS) filed an interpleader action to determine the appropriate beneficiary of Baca's pension in Cause No. 19-2-11629-3 SEA. The City of Seattle, the Estate, and Russell settled SCERS's action. SCERS named Rivas as a party, but the trial court entered a default judgment against him when he failed to appeal. Rivas moved to set aside the default judgment, arguing lack of service. The trial court found that Rivas clearly received proper service and assessed CR 11 sanctions against both Rivas and his attorney, Anthony Baxter, for bringing a motion lacking any factual support.

among the assets in the Trust, his 50 percent interest in the 3713 Property. On June 1, 2017, the probate court admitted the trust into probate as Baca's will.[2]

In February 2020, Russell filed a complaint for a declaratory judgment, seeking a finding that she and Baca shared a committed intimate relationship, and seeking to quiet title to Baca's alleged 50 percent interest in the 3713 Property. Russell hired a process server to personally serve the summons and complaint on Rivas, who at the time lived next door to Russell. The process server unsuccessfully attempted to serve Rivas three times. Twice, the process server saw lights on inside Rivas's home and once he noted movement in the house. In September 2020, Russell moved for authorization to serve Rivas by alternative service. The trial court found that Rivas's actions "reflect intent to evade personal service," and authorized Russell to serve original process on Rivas by certified and regular U.S. mail to his last known address, by e-mail to an address Rivas had provided the court in other lawsuits,[3] and by publication in a public journal or newspaper of record.

On October 13, 2020, Russell served Rivas by U.S. mail, certified mail, e-mail and publication in the King County Daily Journal of Commerce. Three days later, someone signed a certified mail receipt as the "addressee" when the U.S. Postal Service delivered the summons and complaint to the 3713 Property.

---

[2] The court approved a settlement between Russell and the Estate authorizing the personal representative to sell the 3709 Property after the mortgage lender threatened to foreclose. Rivas opposed the sale, claiming he held a right of first refusal to purchase it and to evict Russell. The probate court overruled his objection and authorized the sale to pay off the Estate's largest debt. Rivas appealed the invalidation of his right of first refusal under no. 82684-1-I.

[3] Rivas provided this e-mail address to the trial court when he registered for e-service in the interpleader action and the probate. Rivas does not argue any deficiency in service related to this e-mail address.

Russell's attorney also sent a courtesy copy of the documents by e-mail to Joseph Murphy, an attorney who had by then appeared to represent Rivas in the probate action.

Rivas failed to respond or to appear in this matter. On December 2, 2020, Russell moved for an order of default and default judgment against Rivas. The trial court granted the motions on December 18, finding that Baca and Rivas owned the 3713 Property as "50/50 tenants in common." The court made no findings as to Russell's equitable share of Baca's 50 percent interest, reserving that determination for subsequent hearings.

Rivas's attorney, Murphy, filed a notice of appearance on his behalf on February 9, 2021, but did not file a motion to vacate the default judgment until June 16, 2021. In that motion, Rivas argued that he was never served, that he was entitled to relief from service via publication under RCW 4.28.200, that the signature on the certified mail receipt was not his and thus fraudulent, and that it was reasonable for Rivas to assume the legal documents Russell sent him in the mail related to other lawsuits and were being handled by his attorneys. Rivas claimed that when the process server came to his home, he was either asleep or out of the house. His attorney submitted samples of Rivas's signatures and asked the court to compare them to the signature on the certified mail receipt, arguing the signature on the receipt was not that of Rivas. He also provided the court with a copy of what purported to be an unrecorded quit claim deed allegedly signed by Baca on April 8, 2017, the same day he signed his will, in which Baca ostensibly conveyed to Rivas any interest he held in the 3713 Property. Murphy filed a

- 4 -

subsequent declaration explaining that the October 2020 courtesy e-mail Russell's attorney sent to his e-mail address had gone into his "junk folder."

The trial court denied Rivas's motion to vacate the order of default and default judgment, finding Rivas received actual notice of the lawsuit via U.S. mail, certified mail, and e-mail, he did not act diligently in waiting over six months to move to vacate the default order and judgment, and he provided insufficient reasons to vacate under CR 60. Rivas appeals the denial of his CR 60 motion as to the default judgment. Rivas does not appeal the October 9, 2020 order allowing alternative service. Nor does he challenge the December 18, 2020 order of default in which the trial court found that Rivas was in fact served with the summons and complaint.

ANALYSIS

Rivas contends the trial court erred in denying his motion to vacate the default judgment by failing to consider the strength of his defense to Russell's claim that Baca held a 50 percent interest in the 3713 Property and in rejecting Rivas's evidence that his failure to appear was excusable. We disagree.

We review a trial court's ruling on a motion to vacate a default judgment for abuse of discretion. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). Washington courts favor resolving cases on their merits over default judgments and will liberally set aside default judgments pursuant to CR 55(c) and CR 60 and for equitable reasons in the interests of fairness and justice. *Sacotte Construction, Inc. v. National Fire & Marine Ins. Co.*, 143 Wn. App. 410, 414-15, 177 P.3d 1147 (2008). But courts also recognize the need for a "responsive and

responsible" legal system which mandates that parties comply with a judicial summons. *Griggs,* 92 Wn.2d at 581.

CR 55(c)(1) provides: "For good cause shown and upon such terms as the court deems just, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with rule 60(b)." CR 60(b) enumerates several bases for vacating a judgment. In his motion, Rivas identified the relevant ones as:

> (4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (5) The judgment is void;
> (7) If the defendant was served by publication, relief may be granted as prescribed in RCW 4.28.200;
> (11) Any other reason justifying relief from the operation of the judgment.

The trial court rejected each of these bases.

When considering whether to vacate a default judgment, courts consider whether the moving party has shown that (1) there is substantial evidence to support at least a prima facie defense to the claim asserted, (2) the failure to appear was occasioned by mistake, inadvertence, surprise, excusable neglect, or there was irregularity in obtaining the judgment, (3) the party acted with due diligence after receiving notice of the default judgment, and (4) the plaintiff would not experience a substantial hardship if the court set aside the judgment. *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). "The first two are the major elements to be demonstrated by the moving party, and they, coupled with the secondary factors, vary in dispositive significance as the circumstances of the particular case dictate." *Id.*

Evidence of a Prima Facie Defense

Rivas argues that the April 2017 quit claim deed, which he contends was executed by Baca, is a "conclusive defense" to Russell's quiet title action, making all of the other *White* factors immaterial. But even if we take Rivas's evidence at face value and conclude that it establishes a prima facie defense to Russell's claim, his defense is not as conclusive as he contends and does not preclude the trial court's careful consideration of the remaining *White* factors.

First, *White* does not hold that the existence of a "strong" or "conclusive" defense precludes consideration of any of the other *White* factors. Rivas relies on a quote from our Supreme Court stating "where the moving party is able to demonstrate a strong or virtually conclusive defense to the opponent's claim, scant time will be spent inquiring into the reasons which occasioned entry of the default." 73 Wn.2d at 351. But he omits the caveat to this proposition found in the very same sentence. The court stated that the trial court need not dwell on the other factors "provided the moving party is timely in his application and the failure to properly appear in the action in the first instance is not willful." *Id.* at 352. A party's lack of diligence in moving to vacate and willful failure to appear remain factors, even if a party perceives his defense as strong.

Second, the trial court was not required to accept Rivas's proposition that Baca in fact executed a quit claim deed in his favor. A trial court is not a trier of fact when considering a CR 60 motion. *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000). While a trial court must examine the moving party's evidence of a defense and reasonable inferences from that evidence in the light most favorable to that party, the court must similarly presume

- 7 -

the party in whose favor the default judgment was entered has similarly presented substantial evidence to support her claim. *Id.* ("After a party obtains a [default] judgment, it is presumed that he or she has substantial evidence to support his or her claim. If a CR 60 movant cannot produce substantial evidence with which to oppose the claim, there is no point to setting aside the judgment"). If each party presents substantial evidence, then "each party should be permitted (assuming *White's* other factors are met) to present his or her case to a trier of fact at a properly convened trial." *Id.* at 834-35 (emphasis added).

Third, we cannot conclude that Rivas's evidence conclusively establishes that Baca conveyed his interest in the 3713 Property to Rivas. To establish a prima facie defense, the moving party must submit affidavits that precisely set out the facts constituting a defense and cannot rely merely on allegations and conclusions. CR 60(e)(1). Rivas presented an escrow document indicating that Rivas's father-in-law paid a $43,430.05 down payment on the 3713 Property. He also submitted an unrecorded quitclaim deed dated April 8, 2017, purporting to show that Baca had conveyed any interest he held in the property to Rivas. But this evidence is neither "strong" nor "virtually conclusive" as Rivas contends.

First, the escrow document Rivas submitted listed both Baca and Rivas as the purchasers of the house. Even if we accept at face value Rivas's assertion that his father-in-law, and not Baca and Russell, paid the down payment when Baca and Rivas purchased the 3713 Property, it does not prove that Baca held no interest in the property.

Second, Rivas has not appealed the order of default against him, only the default judgment. Once an order of default is entered, "the defaulting party will be

deemed to have admitted all the allegations of the plaintiff's complaint." *Default and Judgment*, 4 WASH. PRAC., RULES PRACTICE CR 55 (7th ed. 2022). Rivas is thus deemed to have admitted that Russell and Baca were in a committed intimate relationship, as Russell alleged. Rivas presented no evidence to challenge the existence of this relationship. All property acquired during committed intimate relationship is presumed owned by both parties. *Olver v. Fowler*, 131 Wn. App. 135, 140, 126 P.3d 69 (2006). This presumption extends even after the death of one of the partners. *Id.* at 145. If property is jointly owned by the two partners, it becomes subject to equitable division at the death of one of the partners. *Id.* at 146.

Finally, Russell produced evidence calling into question the validity of the quitclaim deed itself. A statutory warranty deed, dated July 5, 2011, a deed of trust dated May 11, 2013, and tax parcel information all identified Rivas and Baca as co-owners of the property. The unrecorded quit claim deed was dated the same day that Baca executed a will in which he identified his interest in the 3713 Property as an asset he wanted to convey into a trust to use to pay the costs of maintenance, mortgage, and taxes on Baca's 3709 Property. This evidence, even when considered in the light most favorable to Rivas, establishes the existence of two inconsistent documents, a will conveying his interest in the 3713 Property into a trust and an unrecorded quitclaim deed conveying the same interest in the same property to Rivas. We therefore reject Rivas's contention that his defense was legally conclusive and that the remaining *White* factors are irrelevant.

Considering the totality of the evidence, Rivas has not established a strong or conclusive defense to Russell's quiet title action. The trial court did not abuse its discretion in analyzing Rivas's motion under the remaining *White* factors.

Mistake or Excusable Neglect

Rivas next argues that the trial court erred in concluding his failure to appear and defend against Russell's lawsuit was inexcusable because the court failed to give adequate weight to his evidence that his failure to appear constituted excusable neglect. We reject this argument as well.

A trial court may vacate a default judgment under CR 60(b)(1) if the defendant's nonappearance was "occasioned by mistake, inadvertence, surprise, [or] excusable neglect." *Sacotte Construction*, 143 Wn. App. at 418.

In some factual circumstances, we have affirmed the granting of a motion to vacate a default judgment when the defendant provided the trial court with persuasive evidence that the failure to appear and respond to a lawsuit was truly a mistake and not gamesmanship. *See Ha v. Signal Elect., Inc.*, 182 Wn. App. 436, 451, 332 P.3d 991 (2014) (affirming decision to vacate default judgment where summons and complaint were delivered to defendant's bankruptcy attorney instead of defense attorney and the bankruptcy attorney forwarded them to the wrong insurance company, resulting in the failure to appear); *Berger v. Dishman Dodge, Inc.*, 50 Wn. App. 309, 312, 748 P.2d 241 (1987) (affirming order vacating default judgment based on genuine misunderstanding between insured and insurer about who was responsible for answering the summons and complaint). But we have also affirmed an order denying a motion to vacate when a person authorized to accept service fails to forward the pleadings to the appropriate

attorney. *See Johnson v. Cash Store*, 116 Wn. App. 833, 848-49, 68 P.3d 1099 (2003) (affirming order denying motion to vacate default judgment after store manager failed to forward pleadings to corporate counsel). Each case is clearly fact-specific.

Here, the trial court found that Rivas failed to present evidence that he did not receive notice of the lawsuit by regular mail, certified mail or e-mail. Our review of this finding is limited to whether it rests on facts supported in the record, was reached by applying the wrong legal standard, or adopted a view that no reasonable person would take. *Mitchell v. Washington State Institute of Public Policy*, 153 Wn. App. 803, 821-22, 225 P.3d 280 (2009).

Rivas first contends that he *did* present evidence, by way of his declaration that Russell could have easily served him personally because he lives next door to her and Russell's sister had personally served him with lawsuits in the past. But the record supports a finding that Russell attempted personal service on Rivas at least three times and the process server twice saw lights on and once saw movement within Rivas's home. The court granted Russell's motion for alternative service, finding that Rivas's actions "reflect intent to evade personal service." As Rivas has not challenged this finding, we accept it as true on appeal. *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015). We thus assume Rivas actively sought to avoid being served.

Rivas next argues that he presented evidence to prove he never received the certified mail. He contends he proved that although someone signed a receipt for the certified letter, he did not do so and the signature on that receipt must have been fraudulent. Rivas also argues the trial court committed legal error by not

comparing the signature on his driver's license to the signature on the return receipt and by not finding that the signature was not his.

Rivas cites to *State v. Smith*, 185 Wn. App. 945, 344 P.3d 1244 (2015) for the proposition that the trial court should have compared his signature on the driver's license to the signature on the certified mail return receipt and concluded that the signature was a forgery. He relies on *Little v. King*, 160 Wn.2d 696, 705, 161 P.3d 345 (2007) to argue the trial court erred in not accepting his evidence in the light most favorable to him. Although *Little v. King* did state that evidence will be viewed in the light most favorable to the party seeking to set aside a default judgment, it did so only in evaluating whether the defendants' evidence established a prima facie defense to the plaintiff's claim. Rivas cites no case law extending this standard to evidence of mistake or excusable neglect.

To the contrary, while the court reviews evidence of a legal defense to a claim in the light most favorable to the moving party, that standard does not extend to the court's determination as to whether the defendant's neglect of the case was excusable. *Rosander v. Nightrunners Transport, Ltd.*, 147 Wn. App. 392, 406, 196 P.3d 711 (2008). When evaluating a claim of excusable neglect, the trial court has broad discretion and "may make credibility determinations and weigh facts in order to resolve it." *Id.* Thus, the trial court was free here to discredit the credibility of Rivas's testimony regarding what he did or did not sign or what he received or did not receive.

Moreover, while *Smith* would allow a court to compare signatures on documents to determine if the signatures match, a court is equally permitted to determine that the fact Rivas did not sign the receipt does not prove he did not

- 12 -

receive actual notice of the lawsuit. Someone signed for the certified mail delivery as the "addressee" at the address where Rivas resides. Rivas did not reside in his home by himself, but lived there with his fiancée. Rivas presented no evidence that the signature is not that of his fiancée. And he presented no evidence that anyone committed forgery and signed a receipt to make it appear as if Rivas had done so. The evidence was undisputed that the certified mail was delivered to Rivas's home address. There is thus evidence in the record that Rivas did in fact receive the documents by certified mail.

Next, Rivas does not contend he never received the pleadings via regular mail or e-mail. Instead, he maintains that even if he did, he was so inundated by Russell's legal actions against him that he likely mistook them as relating to another lawsuit. The trial court did not abuse its discretion in finding that this evidence is insufficient to establish excusable neglect. In *Hwang v. McMahill*, this court concluded that a defendant's assertion that she did not read the summons because she was too upset or impatient to do so provided no tenable basis for the trial court's finding of mistake, surprise, or excusable neglect. 103 Wn. App. 945, 952, 15 P.3d 172 (2000). Rivas's argument is akin to the contention rejected in *Hwang* and the trial court did not abuse its discretion in rejecting it.

Rivas also suggests that Russell acted in bad faith by sending courtesy copies of the documents via e-mail to Rivas's new probate attorney, Joseph Murphy, rather than to an attorney who had represented him previously in litigation involving Russell. The trial court was within its discretion to discredit this argument. The court's order did not require Russell to send the pleadings to any attorney representing Rivas in any other lawsuits. And there is no evidence to even suggest

Russell's counsel could have foreseen that Murphy's e-mail system would deposit the pleadings into his junk mail box, rather than his inbox.

The trial court did not commit legal error in applying the excusable neglect standard and there is evidence in the record to support its findings that Rivas received actual notice of the lawsuit and failed to demonstrate excusable neglect.

<u>Rivas's Due Diligence in Moving to Vacate</u>

Rivas does not contend on appeal that he demonstrated due diligence in moving to vacate the default judgment. We agree with Russell that the record supports a finding to the contrary.

Division Two of this court has held that a defendant did not act with due diligence where she did nothing to set aside the order of default until almost three months after its entry. *In re Estate of Stevens*, 94 Wn. App. 20, 35, 971 P.2d 58 (1999). The trial court did not abuse its discretion in reaching the same conclusion here.

The trial court entered the default judgment against Rivas on December 18, 2020. Russell sent a copy of this order to Rivas via regular mail and e-mail the next day. Murphy entered a notice of appearance on Rivas's behalf in the case on February 9, 2021. Yet, Rivas did not move to vacate the default judgment until June 16, 2021. Rivas failed to explain this delay and simply argued to the trial court, without citation to authority, that he demonstrated due diligence "by making [his motion to vacate the default judgment] within a reasonable time as prescribed in CR 60."

Given the four-month delay between the date counsel appeared and the date Rivas filed the motion to vacate, the trial court was well within its discretion to find he failed to bring the motion in a timely manner.

<u>Hardship to Russell</u>

Rivas does not address this factor on appeal and thus we do not consider it here. *See In the Matter of Adoption of Evans*, 18 Wn. App. 2d 425, 429, n.2, 491 P.3d 218 (2021) (this court will not consider arguments that a party fails to brief).

We conclude the trial court did not abuse its discretion in denying Rivas's motion to vacate the default judgment against him. The trial court applied the correct legal standard and the record supports the trial court's findings. Because Rivas presented insufficient evidence to warrant vacating the judgment under CR 60, we affirm.

<u>Attorney Fees</u>

Russell requests an award of attorney fees from Rivas on appeal under RCW 11.96A.150, which permits such an award as we deem to be equitable. We grant this request, conditioned on her compliance with RAP 18.1(d).[4]

Andrus, C.J.

WE CONCUR:

Chung, J.

Brumm, J.

---

[4] A commissioner of this court referred Russell's request for attorney fees to this panel to address as a motion for reconsideration. The request for attorney fees is granted but the reasonableness of the amount will be addressed by the commissioner as will Rivas's objections to any cost bill.