[Nos. 77291-6; 77784-5; En Banc.] 77867-1.
Argued May 18, 2006.     Decided June 28, 2007.

SHERRI MORIN ET AL., *Petitioners*, v. BONNIE BURRIS ET AL., *Respondents*.

DESIREE C. GUTZ ET AL., *Petitioners*, v. STANLEY B. JOHNSON ET AL., *Respondents*.

MATIA INVESTMENT FUND, INC., *Petitioner*, v. THE CITY OF TACOMA, *Respondent*.

746

748

*Thomas F. Gallagher* (of *Law Offices of Watson & Gallagher*); *Stephen H. Good, Jr.*; and *Joseph P. Wilson*, for petitioners.

*Jeffrey Twersky*; *Marilee C. Erickson* (of *Reed McClure*); *Robin Jenkinson, City Attorney*, and *Anne L. Spangler, Assistant*; *Thomas L. Schwanz* (of *Snook Schwanz*); and *Katina C. Thornock* (of *Cozen O'Connor*), for respondents.

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 CHAMBERS, J. — In all three cases before us, the plaintiffs properly initiated lawsuits against the defen-

dants. In all three cases before us, the defendants failed to file answers or otherwise formally appear. In two of these cases, plaintiffs successfully moved for default judgment. And in each of the cases, the Court of Appeals decided that the default judgments should be set aside.

¶2 This court has long favored resolution of cases on their merits over default judgments. Thus, we will liberally set aside default judgments pursuant to CR 55(c) and CR 60 and for equitable reasons in the interests of fairness and justice. Similarly, if default judgment is rendered against a party who was entitled to, but did not receive, notice, the judgment will be set aside. *Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954). We have also held that the doctrine of substantial compliance applies to the notice requirement of CR 4 when enforcing or setting aside judgments under CR 55 and CR 60. Substantial compliance with the appearance requirement may be satisfied informally. *Cf. State ex rel. Trickel v. Superior Court*, 52 Wash. 13, 100 P. 155 (1909).

¶3 However, whether or not a party has substantially complied with the rules must be decided against the fact that litigation is a formal process. Those who are served with a summons must do more than show intent to defend; they must in some way appear and acknowledge the jurisdiction of the court after they are served and litigation commences. We disagree with our learned colleagues below that *pre*litigation communication alone is sufficient to satisfy a party's duty to appear and defend against a court case. Although substantial compliance with the appearance requirement can be accomplished informally, we do not adopt the doctrine of informal appearance as it has been formulated below. *See, e.g., Batterman v. Red Lion Hotels, Inc.*, 106 Wn. App. 54, 21 P.3d 1174 (2001).

¶4 We hold that merely showing intent to defend before a case is filed is not enough to qualify as an appearance in court. Accordingly, we remand *Morin v. Burris*, noted at 126 Wn. App. 1057, 2005 Wash. App. LEXIS 598, and *Matia Investment Fund, Inc. v. City of Tacoma*, 129 Wn. App. 541, 119 P.3d

391 (2005), to the trial court for reentry of default judgment. However, we agree with the Court of Appeals in *Gutz v. Johnson,* 128 Wn. App. 901, 117 P.3d 390 (2005), that the respondent may have acted diligently and the failure to appear may have been reasonably excused by the conduct of opposing counsel. Accordingly, we vacate that default judgment and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶5 *Morin.* On November 23, 1998, Jeffrey Barth, driving a car owned by his mother, Bonnie Burris, rear-ended a car Sherri Morin was driving. Morin and her insurance provider contacted Barth's insurer, Farmers Insurance, in an attempt to recover damages. On December 16, 1998, Morin was contacted by Farmers' claim representative, Keith Haupt. At that time, Morin was given a check covering the property damage to her car. Morin also told Haupt she was seeing a doctor as a result of the accident and said she would keep in touch.

¶6 Morin and Haupt briefly spoke again in July 1999 and then again in November 1999, when Morin refused a settlement offer and retained Stephen H. Good, Jr., as her counsel. Good and Haupt had unsuccessful settlement discussions in June 2001. There was no further contact between the parties that year.

¶7 On November 2, 2001, Good filed a complaint on Morin's behalf. Burris was personally served on December 4, 2001. After several unsuccessful attempts and with permission of the court, Barth was served by publication on February 28, 2002. The defendants did not respond in any way following service. On May 24, 2002, Morin obtained a default order and on December 3, 2002, she received a default judgment against Burris and Barth. Approximately one year later, Good sent Haupt a letter demanding payment of the default judgment. On February 4, 2004, respondents Barth and Burris filed a motion to vacate the default

judgment, arguing that they had informally appeared in the action and thus were entitled to notice of the plaintiffs' intention to seek an order of default. The trial court agreed and vacated the default judgment. Morin appealed. The Court of Appeals, Division One, concluded that in light of the prelitigation contact between Farmers and Morin, including the payment for property damage, the trial court had not abused its discretion in setting aside default judgment on the ground of an informal appearance.

¶8 *Gutz.* In October 2000, Sharon Gutz, accompanied by her minor daughter, Desiree Gutz, was driving her car when it collided with a car Stanley Johnson was driving. Soon after the accident, the Gutzes filed a damages claim with Johnson's insurer, Allstate Insurance Company. Correspondence and settlement negotiations between Allstate and the Gutzes ensued for the next two and a half years. On October 2, 2003, the Gutzes filed suit against Johnson and his marital community. The Johnsons were served on October 16, 2003. It appears that Johnson promptly left a voice mail message with his Allstate claims representative about the complaint and that he assumed Allstate would take care of the suit.

¶9 The Allstate claims representative denied receiving Johnson's message, but on October 27, 2003, she called the Gutzes' counsel with an offer to settle Sharon's claim. She asserts she inquired whether the case would be litigated. However, the Gutzes' counsel denied that the settlement conversation included any discussion about litigation. On November 6, 2003, the Gutzes moved for and obtained a default order against the Johnsons without notice to Allstate or to the Johnsons. On November 12, 2003, the Allstate claims representative again called and spoke with a paralegal who reported that the action had been filed but did not mention the default order. Allstate subsequently received a copy of the lawsuit sometime in November. On December 2, 2003, Allstate learned of the default order.

¶10 The Johnsons filed a motion to set aside the default order on February 19, 2004, arguing they had informally

appeared through their insurance company. The trial court denied the motion. On March 24, 2004, the Gutzes, again without notice to the Johnsons, obtained a default judgment totaling approximately $155,000. The Johnsons moved to set aside the default judgment and order, reasserting their informal appearance argument and, alternatively, arguing that CR 60(b) warranted vacation of the default judgment. The trial court denied the motion, and the Johnsons appealed. The Court of Appeals vacated the default order and judgment and remanded for a trial on the merits on two independent grounds. The Court of Appeals concluded there was substantial evidence that the Johnsons had informally appeared in the lawsuit through their agent, Allstate, entitling them to notice before the default order was entered. Alternatively, the Court of Appeals concluded the trial court abused its discretion by refusing to vacate the default judgment against the Johnsons under CR 60(b) and *White v. Holm*, 73 Wn.2d 348, 351-52, 438 P.2d 581 (1968).

¶11 *Matia.* Matia Investment Fund, Inc., submitted a bid to buy a parcel of property owned by the city of Tacoma (City). The selection committee recommended Matia's bid to the public utility board for approval. The board authorized Matia's purchase, and Matia entered into a purchase and sale agreement with the City. The agreement was conditioned upon final approval by the city council. When the property purchase came before the council, the council invalidated the entire bidding and selection process.

¶12 Subsequently, Matia filed a damages claim totaling $108,758.95 with the City, apparently the amount of money Matia had incurred in preparing its bid. The City denied Matia's claim. After the claims period had ended, Matia served a summons and complaint on the city clerk's office, which for some reason was not forwarded to the city attorney. Consequently, the City failed to answer the suit or formally appear. Without informing the City, Matia obtained both an order of default and a default judgment against the City.

¶13 More than a year later, Matia attempted to collect the judgment. Almost immediately, the City filed a motion to vacate the default judgment, which the trial court summarily granted. Matia appealed, and the Court of Appeals, Division Two, affirmed the trial court's vacation of the default judgment, reasoning that substantial evidence supported a finding that the City had informally appeared.

¶14 We granted review of all three cases and consolidated them to consider the issue of informal appearance. *Morin v. Burris*, 156 Wn.2d 1016, 132 P.3d 734 (2006); *Gutz v. Johnson*, 156 Wn.2d 1017, 132 P.3d 734 (2006); *Matia Inv. Fund, Inc. v. City of Tacoma*, 157 Wn.2d 1016, 141 P.3d 642 (2006).

## ANALYSIS

¶15 We review a trial court's decision on a motion for default judgment for abuse of discretion. *Yeck v. Dep't of Labor & Indus.*, 27 Wn.2d 92, 95, 176 P.2d 359 (1947).[1] Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *Braam v. State*, 150 Wn.2d 689, 706, 81 P.3d 851 (2003). We review questions of law de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We begin here with a question of law: whether we should adopt the "informal appearance" doctrine as developed in the courts below to determine whether a defendant is entitled to notice of default.

¶16 First, the defendant-respondents argue that prelitigation contacts are sufficient to establish an appearance for purposes of CR 55(a)(3). We disagree.

¶17 This narrow question is best addressed in its larger context and requires us to consider several different civil rules and standards. Under CR 4(a)(3), a "notice of appearance" shall "be in writing, shall be signed by the defendant

---

[1] We decline Division Two's invitation in *Smith v. Arnold*, 127 Wn. App. 98, 110 P.3d 257 (2005), and its progeny to abandon abuse of discretion review in favor of a substantial evidence standard of review. *See White*, 73 Wn.2d at 351-52.

or his attorney, and shall be served upon the person whose name is signed on the summons." Default judgment is largely governed by CR 55, but CR 60 also sets forth when a judgment may be vacated or set aside.

¶18 A party who has appeared in an action is entitled to notice of a default judgment hearing and, if no notice is received, is generally entitled to have judgment set aside without further inquiry. *Tiffin,* 44 Wn.2d at 847. CR 55 does not define "appear" or "appeared." It provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend as provided by these rules and that fact is made to appear by motion and affidavit, a motion for default may be made." CR 55(a)(1). The rule further provides, "[f]or good cause shown and upon such terms as the court deems just, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with rule 60(b)." CR 55(c)(1). CR 60 sets out specific grounds upon which a party may apply to set aside a default judgment. Much litigation focuses on whether default judgment should be set aside because of inadvertence, excusable neglect, surprise, or irregularity in obtaining the judgment or order. CR 60(b)(1).

¶19 Again, we do not favor default judgments. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). We prefer to give parties their day in court and have controversies determined on their merits. *Id.* (quoting *Dlouhy v. Dlouhy,* 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)). A proceeding to vacate or set aside a default judgment is equitable in its character, and the relief sought or afforded is to be administered in accordance with equitable principles and terms. *Roth v. Nash,* 19 Wn.2d 731, 144 P.2d 271 (1943). Thus, for more than a century, it has been the policy of this court to set aside default judgments liberally. *Hull v. Vining,* 17 Wash. 352, 360, 49 P. 537 (1897) (" 'where there is a showing, not manifestly insufficient, the court should be liberal in the exercise of its discretion in furtherance of justice' " (emphasis omitted) (quoting ROBERT Y. HAYNE, A TREATISE ON NEW TRIAL AND APPEAL § 347, at 1046 (1884))).

■ ¶20 Applying CR 55 and CR 60 liberally, this court has required defendants seeking to set aside a default judgment to be prepared to establish that they actually appeared or substantially complied with the appearance requirements and were thus entitled to notice. CR 60(b); *Dlouhy*, 55 Wn.2d 718.[2] Or, alternately, defendants may set aside a default judgment if they meet the four part test set forth in *White:*

> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.

*White*, 73 Wn.2d at 352 (citing *Hull*, 17 Wash. 352). Finally, a default judgment should be set aside if the plaintiff has done something that would render enforcing the judgment inequitable. *See Trickel*, 52 Wash. 13; *cf.* CR 60(b)(4) (allowing default to be set aside based on fraud, misrepresentation, or misconduct by adverse party).

¶21 Turning to the narrower issue of what constitutes an "appearance" under the civil rules, for over a century this court has applied the doctrine of substantial compliance. *See, e.g., Trickel*, 52 Wash. 13. We have not exalted form over substance but have examined the defendants' conduct to see if it was designed to and, in fact, did apprise the plaintiffs of the defendants' intent to litigate the cases. However, where we have applied the substantial compliance doctrine, the defendant's relevant conduct occurred after litigation was commenced. *Id.* at 14 (the defendant did not file a formal notice of appearance but served interrogatories upon the plaintiff); *cf. Dlouhy*, 55 Wn.2d at 722 (defendant's personal appearance in court in divorce action to oppose temporary restraining order suffi-

---

[2] The other grounds set forth in CR 60(b) are not before us.

cient to establish appearance); *Warnock v. Seattle Times Co.*, 48 Wn.2d 450, 452, 294 P.2d 646 (1956) (service of the demand for security for costs was sufficient to constitute appearance); *Tiffin,* 44 Wn.2d at 844 (withdrawal of defendant's counsel did not rescind appearance after written notice of appearance was served on plaintiff's counsel); *State ex rel. LeRoy v. Superior Court,* 149 Wash. 443, 271 P. 87 (1928) (defendant's appearance on a bond in an unlawful detainer action).

¶22 It appears to us that mere intent to defend, whether shown before or after a case is filed, is not enough; the defendant must go beyond merely acknowledging that a *dispute* exists and instead acknowledge that a dispute exists *in court.* Respondents misread *Dlouhy* as supporting a far broader understanding of what can constitute an appearance. *Dlouhy* held that an appearance *in court* to resist a motion to convert a temporary restraining order into an injunction was a general appearance entitling the defendant to notice of the default judgment hearing. *Dlouhy,* 55 Wn.2d at 722. In effect, this court held that by actually appearing in court the defendant substantially complied with the appearance requirement. *Id.* at 719, 724.

¶23 Respondents may have been misled by dicta in *Gage v. Boeing Co.,* 55 Wn. App. 157, 776 P.2d 991 (1989). In *Gage,* the Court of Appeals held that the defendant had appeared in the lawsuit under Washington statutory law by appearing and vigorously contesting the plaintiff's claims in the administrative hearing that led to the court case. *Id.* at 162. Although the *Gage* court mentioned in passing that other jurisdictions had recognized the concept of informal appearance, the court explicitly did not reach whether it was the law of *this* state. *Id.* Subsequently, at least two divisions of our Court of Appeals have relied upon *Gage* and its progeny to adopt the informal appearance doctrine. *E.g., Matia Inv. Fund,* 129 Wn. App. at 546 (Division Two); *Skilcraft Fiberglass, Inc. v. Boeing Co.*, 72 Wn. App. 40, 45, 863 P.2d 573 (1993) (Division One). In *Skilcraft,* the court also set aside

default judgment on the appropriate grounds that plaintiff's counsel misled defendants. *Id.*; *see also* CR 60(b)(4).

¶24 Certainly, there is appeal to the concept of less formal forms of dispute resolution; under some circumstances, less formal forums are available. *See, e.g.*, ch. 7.04A RCW (uniform arbitration act). But litigation is inherently formal. All parties are burdened by formal time limits and procedures. Complaints must be served and filed timely and in accordance with the rules, as must appearances, answers, subpoenas, and notices of appeal. Each has its purpose, and each purpose is served with a certain amount of formality monitored by judicial oversight to ensure fairness.

¶25 We believe that our existing approach of liberal application of rules permitting equity, vacation of default judgments, and application of substantial compliance adequately promote justice. The informal appearance doctrine urged by the respondents would permit any party to a dispute, or any claims representative to a potential dispute, to simply write a letter expressing intent to contest litigation, then ignore the summons and complaint or other formal process and wait for the notice of default judgment before deciding whether a defense is worth pursuing. If a less formal approach to litigation is to be adopted, it should be by rule and not by this court's adoption of an informal appearance rule. Parties formally served by a summons and complaint must respond to the summons and complaint or suffer the consequences of a default judgment. Accordingly, we hold that parties cannot substantially comply with the appearance rules through prelitigation contacts. Parties must take some action acknowledging that the dispute is in court before they are entitled to a notice of default judgment hearing, though they may still be entitled to have default judgment set aside upon other well established grounds.

¶26 Having rejected the doctrine of informal appearance as formulated below, our inquiry is not done. We must apply the existing rules to these cases. The defendants in both *Matia* and *Morin* have not substantially complied with the

appearance rules. We find no action in either case acknowledging that the disputes were in court. Thus, they were not entitled to notice of the default judgment hearing. Nor has either established mistake, surprise, or excusable neglect as required by *White*, 73 Wn.2d at 352, or inequitable conduct as required by *Trickel*, 52 Wash. 13. We need go no further.

¶27 However, *Gutz* is more difficult. We agree with the Court of Appeals that the defendants were entitled to have the trial court reach the substance of their argument. *Gutz*, 128 Wn. App. at 910-11. Furthermore, in *Gutz*, the record supports an inference that plaintiffs' counsel actively concealed the fact that a summons and complaint had been filed. Under the circumstances, Johnson has made a sufficient enough showing that we remand to the trial court for further consideration of whether Johnson has met the standards of *White* and/or CR 60(b)(1), (4).

¶28 Again, the Gutzes' claim arose from a motor vehicle collision upon which the statute of limitations would run on October 6, 2003. Their counsel contacted Allstate by November 2002. The complaint was filed on October 2, 2003, the Johnsons were served on October 16, 2003, and it appears the Johnsons informed their Allstate representative of that fact by voice mail shortly afterward. While denying that she received the voice mail, it is uncontested that the Allstate claim representative called Gutzes' counsel on October 27, 2003, regarding settlement. The Allstate representative asserts that she asked Gutzes' counsel whether the case would be litigated. This assertion seems very reasonable considering that the three-year statute of limitations had run; either the Gutzes' had not filed their suit and Allstate was not exposed to potential liability or the suit had been filed and Allstate needed to appear. Gutzes' counsel denies having any discussion about litigation, but he certainly knew that litigation had been commenced and that Allstate was still trying to settle the claim. Allstate's representative again called Gutzes' counsel's office on November 12, 2003, and spoke to a paralegal. Again,

neither Gutzes' counsel nor his paralegal disclosed that litigation had been commenced or that a motion for a default judgment had been taken on November 6, 2003.[3]

¶29 Gutzes' counsel had no duty to inform Allstate of the details of the litigation. But counsel's failure to disclose the fact that the case had been filed and that a default judgment was pending when the Johnsons' claim representative was calling and trying to resolve matters, and at a time when the time for filing an appearance was running, appears to be an inequitable attempt to conceal the existence of the litigation. If the Johnsons' representative acted with diligence, and the failure to appear was induced by Gutzes' counsel's efforts to conceal the existence of litigation under the limited circumstances we have described above, then the Johnsons' failure to appear was excusable under equity and CR 60. *See Trickel*, 52 Wash. at 15; CR 60(b)(4) (default judgment may be set aside for fraud, misrepresentation, or other misconduct). Since the trial judge does not appear to have reached this issue, *see Gutz*, 128 Wn. App. at 910, we remand for further consideration.

## CONCLUSION

¶30 We favor resolution of disputes on the merits. We will liberally apply the civil rules and equitable principles to vacate default judgments where fairness and justice require. However, when served with a summons and complaint, a party must appear. There must be some potential cost to encourage parties to acknowledge the court's jurisdiction. Substantial compliance will satisfy the notice of appearance requirement. We do not exalt form over substance, and appearance may be accomplished infor-

---

[3] Gutz argues that an insurance adjuster cannot informally appear on behalf of a defendant. Because we remand to the trial court to decide whether the default judgment should be set aside on equitable grounds and/or on the basis of CR 60(b)(4), we do not reach that argument. Gutz also argues that Johnson failed to preserve his assignments of error by not appealing the default order. We agree with the reasoning and conclusion of the court below that that argument is not well taken. *Gutz*, 128 Wn. App. at 910-11.

mally. However, we reject the argument that prelitigation communications alone may satisfy the appearance requirements of CR 4 and CR 55, and we decline to adopted the doctrine of informal appearance as formulated by the courts below. In the cases, before us, the respondents in *Morin* and *Matia* failed to appear and have not shown other cause to set aside default judgment. The Court of Appeals is reversed in those cases and the default judgments are reinstated. In *Gutz*, we find facts that may justify vacation of the default judgment, and we remand to the trial court for further proceedings consistent with this opinion.

C. JOHNSON, SANDERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶31 BRIDGE, J. (concurring in part/dissenting in part) — I agree with the majority in its ultimate conclusion that the respondents in *Morin* and *Matia* failed to appear, and thus we should reverse the Court of Appeals in those cases. *Morin v. Burris*, noted at 126 Wn. App. 1057 (2005); *Matia Inv. Fund, Inc. v. City of Tacoma*, 129 Wn. App. 541, 119 P.3d 391 (2005). However, I disagree with the majority's reasoning. By rejecting the informal appearance doctrine, the majority substantially changes the law upon which all three divisions of our Court of Appeals have relied. Additionally, I would affirm the Court of Appeals' ruling in *Gutz v. Johnson*, 128 Wn. App. 901, 117 P.3d 390 (2005), rather than remanding the case to the trial court to consider the CR 60 issue.

¶32 As the majority recognizes, default judgments are disfavored. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). This is so because of our longstanding preference that controversies be determined on the merits rather than by default. *Id.* (citing *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)). "A proceeding to vacate a default judgment is equitable in character and relief is to be afforded in accordance with equitable principles." *Id.* Equity favors substance over form. To that end, when a trial court hears a motion to

vacate, it must make its determination on a case-by-case basis.

> "Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

*Id.* at 582 (quoting *Widicus v. Sw. Elec. Coop., Inc.*, 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)). Thus, principles of equity inform our consideration of what acts may constitute an appearance.

¶33 An entry of default is governed by CR 55(a)(3), which provides that "[a]ny party who has *appeared in the action* for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion." (Emphasis added.) If a party has not appeared in an action, then that party is not entitled to notice of the motion for default order or judgment. CR 55(a)(3). Conversely, where a party has appeared, failure to give notice of any motion for default requires that any resulting order or judgment be set aside as a matter of law. *Shreve v. Chamberlin*, 66 Wn. App. 728, 731-32, 832 P.2d 1355 (1992); *see Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954).

¶34 Formal appearances are governed by RCW 4.28.210, but we have recognized that the statutory methods of appearance are not exhaustive and that there are other, informal ways in which a party may appear. *Dlouhy*, 55 Wn.2d at 721. Our Court of Appeals has held that a party informally appears when it manifests an intent to defend. "Whether a party has 'appeared' informally is generally a '*question* "*of intention*, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for affirmative action from the court, constituting a submission to the court's jurisdiction." ' " *Smith v. Arnold*, 127 Wn. App. 98, 104, 110 P.3d 257 (2005) (emphasis added) (quoting

*Gage v. Boeing Co.*, 55 Wn. App. 157, 161, 776 P.2d 991 (1989) (quoting Annotation, *What Amounts to "Appearance" under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention To Take Default Judgment*, 73 A.L.R.3d 1250, 1254 (1976))). An essentially unresponsive party cannot be said to have appeared. *Gage*, 55 Wn. App. at 160-61 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 139 U.S. App. D.C. 256, 432 F.2d 689, 691 (1970)). A party is unresponsive when it allows the plaintiff to reasonably harbor illusions about whether the opposing party intends to defend a matter. *Smith*, 127 Wn. App. at 104.

¶35 The majority nevertheless concludes that the "manifested intent" test adopted by our Court of Appeals is an incorrect reading of this court's early case law concerning informal appearance. Majority at 756-57. Instead, it sets forth a "substantial compliance" test. *Id.* at 755. In order to determine whether a party informally appeared, the majority asks whether a party's actions substantially comply with the statutory appearance "requirements." *Id.*; RCW 4.28.210. Yet we have found that this statute does not set forth an exhaustive list of the ways in which one may appear. *Dlouhy*, 55 Wn.2d at 721 ("[I]t is settled law that the statutory methods of appearance are not exclusive."). It is problematic to ask that parties who seek to informally appear substantially comply with a statute that does not offer fixed boundaries as to what constitutes an appearance. The majority's test is unworkable.

¶36 While I would endorse an equitable consideration of informal appearance based on a party's manifested intent to defend, I agree with the majority that parties must acknowledge the dispute as existing in court. The plain language of CR 55 indicates that a party must *appear in the action* at hand in order to receive notice of a default. CR 55(a)(3). Under the rule's express language, a party cannot appear, informally or otherwise, in an action that has not yet commenced. Therefore, regardless of a party's manifested intent to defend *before* a lawsuit is filed, I would hold

that a party must exhibit that same intent *after* an action is commenced in order to assert that it informally appeared. *See Dlouhy*, 55 Wn.2d at 724 (explaining that a "party's acts must have some direct purpose *in the cause* to constitute an appearance; the acts cannot be wholly collateral" (emphasis added)).

¶37 In application, the equitable considerations underlying a review of default proceedings suggest that a case-by-case review is appropriate. *Griggs*, 92 Wn.2d at 582. "Abuse of discretion is less likely to be found if the default judgment is set aside." *Id.* A trial court abuses its discretion when its decision is manifestly unreasonable, or based on untenable grounds, or exercised for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

> A discretionary decision rests on "untenable grounds" or is based on "untenable reasons" if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'"

*Id.* (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990))).

¶38 Here, I would find that because the courts below did not consider that the plain language of CR 55 requires a party to informally appear *after* an action is filed, each applied an incomplete test for informal appearance, and their decisions are therefore in error. Respondents Burris, Barth, and the city of Tacoma did not have contact with their opposing parties after their respective lawsuits were filed against them. Under the plain language of CR 55, they cannot have informally appeared. Accordingly, I agree that we should reverse the Court of Appeals in *Morin* and *Matia Investment Fund.*

¶39 In the case of *Gutz*, I, like the majority, would not consider whether the Johnsons informally appeared, look-

ing instead to whether they were entitled to have the default judgment set aside under CR 60. However, rather than remanding the case, I would affirm the Court of Appeals' vacation of the default judgment under CR 60(b). *See Gutz*, 128 Wn. App. at 916-21. A court may vacate a default order or judgment if the defaulting party can show that its failure to appear was the result of, among other things, mistake or excusable neglect. CR 60(b)(1). Under CR 60(b)(1), the party moving to vacate a default judgment must show the following: (1) there is substantial evidence to support at least a prima facie defense to the claim plaintiffs assert; (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the defendant acted with due diligence after notice of the default judgment; and (4) the plaintiffs will not suffer substantial hardship if the default judgment is vacated. *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

¶40 The majority finds that because the trial judge did not reach the CR 60 issue, we should remand the case to the trial court for further consideration. Yet the Gutzes do not dispute the Court of Appeals' conclusion that the Johnsons carried their burden of proof under CR 60(b)(1). Instead, the Gutzes appear to argue that the Court of Appeals erroneously concluded that the trial court abused its discretion when it failed to consider the Johnsons' CR 60(b)(1) motions. The majority agrees with the Court of Appeals that the trial court should have considered this issue, but rather than deciding it here, holds that we should remand to that court. However, I believe that the Johnsons adequately carry their burden under this test. Suppl. Br. of Resp't Johnson at 12-20. In particular, I am persuaded that the Johnsons' failure to appear was the result of mistake or excusable neglect arising from a reasonable miscommunication with their insurer. *See White*, 73 Wn.2d at 354-55 (suggesting that an insured defendant may reasonably rely on his insurance agent to defend an action, including by providing counsel). Accordingly, I agree with the Court of Appeals that the trial court abused its discretion when it

refused to vacate the judgment against the Johnsons under CR 60(b) and that the case should be remanded for a trial on the merits.

## Conclusion

¶41 I would hold that a party in Washington may informally appear such that notice to that party is required before a default order or judgment is sought against it. Informal appearance is a matter of intent, but such intent must be manifested after an action is commenced. Because there was no contact between the parties after their respective actions were commenced, the respondents in *Morin* and *Matia Investment Fund* did not informally appear. I therefore agree with the majority that we should reverse the Court of Appeals' decisions in those cases. In the case of *Gutz*, I do not believe it is necessary to determine whether respondents Johnson informally appeared because I would conclude that the trial court abused its discretion when it failed to grant the Johnsons' CR 60(b)(1) motion to vacate the judgment against them. Therefore, I would affirm the Court of Appeals and remand *Gutz* for a trial on the merits.

ALEXANDER, C.J., and MADSEN, J., concur with BRIDGE, J.

Motions for reconsideration denied October 3, 2007.