

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | ) |
| | ) No. 71994-7-I |
| NADIA SHAFAPAY, | ) |
| | ) DIVISION ONE |
| Appellant, | ) |
| | ) UNPUBLISHED OPINION |
| v. | ) |
| | ) |
| MEHRDAD SHAFAPAY, | ) FILED: August 3, 2015 |
| | ) |
| Respondent. | ) |

APPELWICK, J. — Shafapay appeals the trial court's order denying her motion to vacate the dissolution decree. She asserts that her husband misrepresented his assets to the trial court during the dissolution proceedings and that the decree should be vacated under CR 60(b). We affirm.

## FACTS

Nadia and Mehrdad Shafapay married in 1985.[1] Originally from Iran, they ultimately immigrated to Washington State. During their marriage, they had four children. They separated in 2010.

---

[1] As is our common practice, we refer to the parties by their first names for the sake of clarity. We intend no disrespect.

The dissolution trial took place from June 18 to June 20, 2012. The trial court heard testimony from the parties and several other witnesses, reviewed exhibits, and considered the legal briefing and closing arguments by counsel.[2]

In its findings, the trial court stated,

> Both sides in this case accuse the other of having secreted away community assets. The husband argues that the wife has moved funds into bank accounts in Vancouver, London and Iran, placing them out of sight and reach of the court. Meanwhile, the wife argues that the husband has made phony transactions, temporarily placing properties and other assets in the hands of friends and thus also out of sight and reach of the court. Either or, quite possibly, both of them may well be right. The problem is that the court must make decisions based on the actual evidence put before it and not on suspicions.

The court further "observe[d] that the hit-and-miss quality of the financial records produced by both sides, leaving many unanswered questions, has failed to bolster confidence in the credibility of either party."

The court found that the parties' only community asset with any appreciable value was a piece of commercial property located at 3605 W. Nob Hill Boulevard in Yakima, which the court concluded had approximately $100,000 of equity. The court also addressed several other pieces of real estate: the Kirkland residence where Nadia lived, that was owned by Mehrdad's friend Mohammad Harandi and was in foreclosure; a Yakima property at 8102-4 W. Nob Hill Boulevard, owned by Mehrdad but also in foreclosure; a Yakima property at 9406 Occidental Road, that was titled in the name of the parties' daughter, Natasha Shafapay, and also in foreclosure; and Mehrdad's

---

[2] The transcript, exhibits, and pleadings from the dissolution trial are not in the record before us, nor were they before the trial court considering Nadia's motion to vacate. However, the record does contain the trial court's findings of fact and conclusions of law, which shed some light on the issues raised during the dissolution proceedings.

postseparation residence in Yakima at 5220 Norman Road, that was a rental property. The court found that there was no community equity in these four properties.

The court acknowledged that, typically, a wife in Nadia's position would be awarded a disproportionate share of marital assets. But, it also noted that the "problem here is that there is no list of community property waiting to be divided up. There is simply a long list of community debts." To avoid burdening Nadia further with community debt, the court awarded an "extremely disproportionate" share of community liabilities to Mehrdad. Accordingly, to reach a fair and equitable distribution, the court also awarded the commercial property to Mehrdad. On June 25, 2012, the trial court entered a decree of dissolution reflecting this allocation.

On April 4, 2014, Nadia moved to vacate the decree and reopen the property division portion of the dissolution case. She submitted several declarations in support of her motion. These included her own declaration, in which she accused Mehrdad of misleading the court as to his interest in various real properties and failing to disclose other assets. Nadia also submitted a declaration from the parties' son, Jordan Shafapay, who stated that his father lived a lifestyle inconsistent with someone who was mostly in debt with few assets. In addition, Nadia submitted the declaration of a private investigator, Benny Bridges, who looked into Mehrdad's financial circumstances and concluded "with little to no doubt that [Mehrdad] grossly misled [Nadia] and this Court." Finally, Nadia submitted an affidavit from an immigration attorney, Jay Gairson, who stated that Mehrdad's visa status suggested that his businesses had substantial value.

Mehrdad submitted a declaration in response, emphatically denying the allegations and offering explanations to refute the negative inferences drawn in Nadia's supporting declarations. In addition, Mehrdad noted that much of what was alleged had already been raised in the dissolution proceedings.

The trial court found that it could not conclude, based on the evidence presented, that Mehrdad had committed fraud. Rather, the court noted, it must speculate or draw inferences in order to reach the result Nadia requested. The court further stated that Nadia did not demonstrate that the evidence presented was previously unavailable. The court denied Nadia's motion to vacate.

Nadia appeals.

## DISCUSSION

Nadia argues that the trial court erred in denying her motion to vacate the dissolution decree. She asserts that vacation is justified under CR 60(b), because she presented newly discovered evidence that Mehrdad committed fraud and misrepresentation in disclosing his assets to the trial court.

We review a trial court's decision on a motion to vacate a default judgment for abuse of discretion. Morin v. Burris, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). The trial court "should exercise its authority liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done." White v. Holm, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. Morin, 160 Wn.2d at 753.

4

Nadia's argument implicates two provisions of CR 60(b). Under CR 60(b)(3), a trial court may vacate a judgment where there is newly discovered evidence that, by the exercise of due diligence, could not have been discovered before the trial. See also Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). Under CR 60(b)(4), the trial court may vacate a judgment due to fraud, misrepresentation, or other misconduct of an adverse party.

Under either provision, Nadia's argument fails. First, she has not shown that the evidence presented could not have been discovered before trial. The majority of her evidence involved transactions that took place prior to the June 2012 dissolution proceedings. In fact, many of these transactions were considered in the dissolution proceedings. Therefore, Nadia did not meet the requirements of CR 60(b)(3).

Second, the evidence presented was insufficient to demonstrate that Mehrdad committed misconduct. A party seeking relief under CR 60(b)(4) must establish fraud, misrepresentation, or misconduct by clear and convincing evidence. Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). Clear and convincing evidence is that which shows the ultimate fact at issue to be highly probable. Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc., 64 Wn. App. 661, 678, 828 P.2d 565 (1992). Here, as the trial court acknowledged below, one must speculate or make inferential leaps to conclude that Mehrdad's financial representations were fraudulent.

For example, although Nadia's private investigator, Bridges, addresses numerous findings that he believes demonstrate Mehrdad's misconduct, none of them make it highly probable that Mehrdad committed fraud. For instance, to show that Mehrdad—not Natasha—owned the Occidental Road property, Bridges notes that the property was

quitclaimed to Natasha for no money, that Mehrdad later took out a line of credit on the house, and that Mehrdad paid the property taxes. But, an inference must still be drawn to conclude from this that Mehrdad fraudulently placed the house in his daughter's name. And, Mehrdad provided conflicting evidence, stating in his declaration that he and Nadia agreed to purchase the home for Natasha as a gift, which he testified to at the dissolution trial and Nadia did not deny at the time. Bridge's remaining allegations as to Mehrdad's fraudulent behavior are likewise inferential.

The same is true for immigration attorney Gairson's declaration as to Mehrdad's visa status. Gairson explained that Mehrdad had an investor visa, a visa status which requires that he show a substantial income derived from his business, above that necessary to solely earn a living. As a result, Gairson concluded that it was "more likely than not" that the value of Mehrdad's personal assets in his businesses exceeded $100,000. But, Gairson admits that he did not have access to Mehrdad's visa application and thus was "unable to ascertain the actual value of his investments in these companies or the value of these companies."

Nadia's declaration is similarly speculative. For example, Nadia submitted evidence that Mehrdad and Harandi—the owner of the Kirkland property—both list the same home address. Nadia alleged this showed that Harandi kept the Kirkland property in his name for Mehrdad's benefit. But, this fact raises only a suspicion of fraudulent behavior. Nadia further asserts that Mehrdad failed to disclose his 401(k) account to the trial court. She submitted a 2001 account statement as proof. But, Mehrdad explained that, by the early 2000's, the 401(k) account had been liquidated to pay off debts.

6

In Jordan's declaration, he alleged that his father misrepresented to the court that his Harley Davidson motorcycle had been repossessed. Jordan further asserted that his father had placed $60,000 in Natasha's bank account prior to the dissolution trial. There was no proof to support these assertions. And, according to Mehrdad's declaration, these allegations are "simply not correct."

In sum, Nadia attacks Mehrdad's financial disclosures from a number of angles, but raises only a suspicion that Mehrdad in fact made misrepresentations to the court. She does not establish by clear and convincing evidence facts necessary to support vacation of the decree under CR 60(b)(4).

In the alternative, Nadia asserts that the decree should be vacated under CR 60(b)(1) due to her attorney's failure to discover evidence of Mehrdad's fraud and present it to the trial court prior to entry of the decree. Under CR 60(b)(1), a trial court may vacate a judgment where there were "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." However, an attorney's negligence does not constitute excusable neglect for the purposes of vacating a judgment on the merits under CR 60(b)(1). Haller v. Wallis, 89 Wn.2d 539, 544, 573 P.2d 1302 (1978). "Absent fraud, the actions of an attorney authorized to appear for a client are binding on the client at law and in equity. The 'sins of the lawyer' are visited upon the client." Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 679, 41 P.3d 1175 (2002) (footnotes omitted).

7

The trial court did not abuse its discretion in denying Nadia's motion to vacate the dissolution decree. We affirm.

WE CONCUR:

Appelwick, J

Trickey, J