IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| MICHELLE MURPHY, | No. 80554-1-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRIAN FALKOWSKI, | |
| Appellant. | |

BOWMAN, J. — A trial court's denial of a motion to vacate a default judgment under CR 60(b) will not be overturned on appeal unless the court manifestly abused its discretion. The defendant in this case failed to present substantial evidence of a prima facie defense on the merits or show excusable neglect. The trial court did not abuse its discretion in denying his motion to vacate the default judgment. We affirm.

FACTS

On April 6, 2018, Michelle Murphy filed a civil lawsuit against Brian Falkowski, her former romantic partner of more than two years. Murphy alleged that while on vacation in Belize two years earlier, Falkowski assaulted her, causing physical and emotional injuries. She sought special damages, mainly related to costs incurred for medical treatment; and general damages. On June

Citations and pin cites are based on the Westlaw online version of the cited material.

12, 2018, Murphy arranged to serve Falkowski personally with copies of the summons, complaint, notice of appearance, and case scheduling order.

On June 21, attorney Douglas Sulkosky filed a notice of appearance on Falkowski's behalf. Less than two months later on August 1, 2018, citing Falkowski's failure to pay the retainer fee and "cooperate" in his defense, Sulkowsky withdrew from the representation without having answered the complaint. Sulkosky provided Falkowski's Maple Valley home address for the service of additional pleadings.

Sulkosky also informed Falkowski of his intent to withdraw on August 1. Sulkosky apprised Falkowski of the next scheduled hearing date and instructed him to consult the deadlines listed in the case scheduling order, warning, "You should review the Case Schedule to determine the various deadlines." Sulkosky explained to Falkowski that he forwarded Falkowski's unnotarized responses to the requests for admissions to Murphy on the due date but did not respond to other outstanding discovery requests because "I cannot answer them for you." Sulkosky also invited Falkowski to contact him if he had any questions.

On September 14, 2018, Murphy filed a motion seeking an order of default and noted a hearing for October 3 without oral argument. On the same date, a legal assistant employed by Murphy's counsel mailed the motion and declaration to Falkowski's address. Falkowski did not respond to the motion and on October 5, 2018, the court entered an order of default.

About four months later on February 15, 2019, Murphy filed a motion seeking a default judgment of $1,058,235. Murphy supported her motion with a

2

declaration describing the details of the alleged assault and the declaration of a neurosurgeon who treated her neck injuries. She also provided photographs depicting injuries on her neck and facial area, documents to support her medical expenses, and evidence of damage awards and settlement amounts in comparable cases. On the same day, Murphy's attorney's legal assistant mailed all of the documents to Falkowski's address, including Murphy's motion for default judgment, her supporting evidence, notice of the court date, and her proposed findings of fact and conclusions of law.[1] Falkowski did not respond.

On February 22, approximately two weeks before the hearing on the motion for default judgment, the court's bailiff notified Murphy's counsel by e-mail that an evidentiary hearing was required and proposed several dates to schedule the hearing. The bailiff's e-mail included standard language directing counsel to "forward this communication to all other counsel/parties not already copied on this e[-]mail." On February 28, Murphy's counsel's legal assistant mailed Falkowski a letter informing him that the court set the matter for an evidentiary hearing with oral argument at 10:00 a.m. on March 15 and attached the e-mail correspondence with the court's bailiff. Falkowski did not respond.

At the evidentiary hearing on March 15, 2019, Murphy presented argument, witness testimony, and exhibits. Falkowski did not appear at the hearing. The court reserved ruling on the motion for default judgment.

---

[1] Although the legal assistant signed and filed the declaration of mailing on February 15, 2019, the same date Murphy filed her motion for default judgment and supporting documents with the court, it contains a typo indicating an obviously incorrect mailing date of September 11, 2018. Murphy submitted an altered mailing declaration with the correct mailing date and the court clerk's file stamp of February 15, 2018 in support of her opposition to the motion to vacate the order of default and default judgment.

On March 18, the trial court entered extensive findings of fact and conclusions of law. The court found Murphy's testimony to be "candid and entirely credible." The findings state, in pertinent part:

8. On April 6, 2016, while in Belize, Mr. Falkowski intentionally, willfully, and maliciously assaulted Ms. Murphy, both by hand and by using a thick plastic water bottle, resulting in serious physical and emotional injury.

9. Mr. Falkowski grabbed Ms. Murphy by the neck and suspended her up against the wall. Ms. Murphy testified that during the assault she feared for her life.

10. Mr. Falkowski threw Ms. Murphy by her neck across a hotel room and beat her with a thick water bottle. Photographs taken contemporaneous to the time of the assault were admitted at the evidentiary hearing as Exhibit 1. In addition, security was called to the room after the incident, and the security guards were afraid to kick Mr. Falkowski out of the room because of his physical stature and their belief he was dangerous.

. . . .

16. The assault caused problems in Ms. Murphy's neck, right arm, and right hand, including pain, numbness, and weakness.

17. Because of the assault, Ms. Murphy could not feel the fingers in her right hand and could not turn her neck to the right. This loss of feeling in her fingers in her right hand has impacted Ms. Murphy's work and made it difficult for her to do the work she was able to perform prior to the assault.

18. More specifically, the injuries from the assault affected Ms. Murphy's ability to perform injections and other procedures at work. It also interfered with her ability to compete athletically.

19. Mr. Falkowski's assault of Ms. Murphy caused her to need diagnostic imaging, physical therapy, and a cervical spine disc replacement surgery, which included replacing her natural vertebral bone with an artificial disc.

. . . .

24. Ms. Murphy testified that she now lives in constant fear of seeing or running into Mr. Falkowski, whether it be when she is riding her bicycle or thinking about her two children, ages 16 and 13, going to the bus stop for school, because not only does Mr. Falkowski live in relative proximity to Ms. Murphy and possesses many weapons, but they are also part of the same athletic community. Ms. Murphy further testified that after the assault she views the world differently, and now walks through the world and her life in fear of seeing Mr. Falkowski.

4

. . . .

27.     Ms. Murphy's medical bills caused by the assault total $105,735.48 to date.  These bills, as well as a declaration from Dr. Richard Wohns describing Ms. Murphy's medical treatments and conditions, were admitted into evidence at the evidentiary hearing as Exhibit 3.

28.     As detailed above, Ms. Murphy suffered long-lasting emotional trauma as a result of Mr. Falkowski's intentional, willful, and malicious assault.

29.     The emotional distress damages Murphy suffered as a result of Falkowski's assault are $950,000.

On March 27, 2019, the court entered a default judgment against Falkowski in the amount of $1,058,235.  The next day on March 28, Murphy's counsel's legal assistant mailed the court's findings and conclusions and the judgment to Falkowski's address.[2]

Two months later, new counsel filed a notice of appearance on behalf of Falkowski.  On July 31, 2019, four months after entry of the default judgment, Falkowski filed a motion for an order to show cause and to vacate the default judgment and order of default.

Falkowski denied intentionally assaulting or "causing any injuries" to Murphy and asserted that she exaggerated her claimed damages.  In his declaration, Falkowski acknowledged that he and Murphy had an argument their last night in Belize.  According to Falkowski, Murphy was heavily intoxicated and tried to provoke him by first pouring a gallon of water over him as he lie in bed and then pouring another liquid over him, which he "perceived" to be urine.

---

[2] For the first time in his reply brief, Falkowski points out that the cover letters mailed by Murphy's attorney's office dated February 28 and March 28, 2019 contain incorrect address information identifying his city of residence as Kent instead Maple Valley.  We note that "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).  In any event, both declarations of mailing appended to the cover letters state the correct address.  And to the extent Falkowski suggests Murphy mailed documents to the wrong city, he admits that he received the documents mailed on March 28, including the default judgment.

When he attempted to take the container out of Murphy's hands, Falkowski alleged that Murphy attacked him. Falkowski maintained that he only defended himself and did not cause any visible injuries to Murphy.

Falkowski submitted copies of text and e-mail messages he exchanged with Murphy in the days and months following their return from Belize. He relied on that evidence to show that while distraught over the demise of the relationship, Murphy mentioned no lingering physical effects from the incident. Falkowski also alleged that Murphy completed at least one "Iron Man"[3] event after she returned from Belize and before she had surgery, which led him to suspect that she sustained the injuries in a cycling accident.

Falkowski asserted that his "neglect in allowing the default judgment to be entered, if any, is wholly excusable." In explaining his failure to respond to the complaint and Murphy's motions, Falkowski said he believed the lawsuit "would never become a serious issue" due to the "absurdity of the allegations." And because his former counsel noted on a June 2018 "transmittal memorandum" that he filed a notice of appearance to "avoid any defaults," Falkowski reasonably believed that he was protected against a default judgment. Falkowski also said that his prior attorney failed to tell him that he needed to answer the complaint.

Falkowski stated that he did not receive any court filings or correspondence by e-mail and that he did not "recall" receiving any pleadings in the mail after Sulkosky withdrew. Falkowski stated, "If I did, I certainly did not perceive those mailings as contradicting what I had been told by Sulkosky—that I

---

[3] The Ironman Triathlon consists of a 2.4-mile swim, 112.0-mile bicycle ride, and 26.2-mile run in a single day.

had 'avoided default'." While Murphy mailed the default judgment to him in late March, Falkowski reported that he did not receive it until "late April or early May" and did not open the envelope until several weeks later.

The court entered a show cause order and held a hearing on the motion to vacate. After considering the parties' briefing, exhibits, and arguments, the trial court denied the motion. Falkowski appeals.

ANALYSIS

A default judgment may be set aside for good cause in accordance with CR 60(b). CR 55(c)(1). Although Falkowski insists that we have the "option" to apply a de novo standard of review, it is well established that the decision to vacate an order of default is addressed to the sound discretion of the trial judge. Little v. King, 160 Wn.2d 696, 702-03, 161 P.3d 345 (2007) (citing Yeck v. Dep't of Labor & Indus., 27 Wn.2d 92, 95, 176 P.2d 359 (1947)). We will not overturn a trial court's decision on a CR 60(b) motion to vacate a judgment unless it plainly appears that the trial court abused its discretion. Luckett v. Boeing Co., 98 Wn. App. 307, 309, 989 P.2d 1144 (1999). A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." Little, 160 Wn.2d at 710.

Default judgments are "generally disfavored in Washington based on an overriding policy which prefers that parties resolve disputes on the merits." Showalter v. Wild Oats d/b/a Nature's Grocery, 124 Wn. App. 506, 510, 101 P.3d

867 (2004). At the same time, we "value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules." Little, 160 Wn.2d at 703. As our Supreme Court has recognized that "litigation is inherently formal," all parties "are burdened by formal time limits and procedures." Morin v. Burris, 160 Wn.2d 745, 757, 161 P.3d 956 (2007). When balancing the competing policies, our primary concern is that a trial court's decision on a motion to vacate a default judgment is "just and equitable." Little, 160 Wn.2d at 711.

CR 60(b) lists 11 grounds on which a party may seek relief from judgment. Falkowski based his motion on CR 60(b)(1), which authorizes a trial court to vacate a judgment due to "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." Falkowski argued that "excusable neglect" warranted vacating the judgment.[4]

When resolving a CR 60(b)(1) motion, our courts evaluate four factors outlined in White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). See also Little, 160 Wn.2d at 703-04. The moving party bears the burden of showing (1) substantial evidence to support a prima facie defense; (2) the failure to timely appear in the action and answer the complaint was due to mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence after

---

[4] In his reply brief in support of the motion to vacate below, Falkowski cited "attorney misconduct" as a basis to vacate under CR 60(b)(11) but later clarified at the show cause hearing that he based his motion solely on CR 60(b)(1). As the trial court noted, CR 60(b)(11) is a "catchall" provision. See State v. Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005) ("CR 60(b)(11) is a catch-all provision, intended to serve the ends of justice in extreme, unexpected situations."). Relief under CR 60(b)(11) is limited to "extraordinary circumstances" relating to "irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings." In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985). Falkowski identified no extreme or extraordinary circumstances that implicate CR 60(b)(11).

8

notice of the entry of default; and (4) the opposing party will not suffer substantial hardship if the trial court vacates the default. White, 73 Wn.2d at 352. The first two factors are primary while the latter two factors are secondary. White, 73 Wn.2d at 352; Little, 160 Wn.2d at 704. The four factors are "interdependent"— the strength of the showing on any one factor affects the showing needed on the other factors. Norton v. Brown, 99 Wn. App. 118, 124, 992 P.2d 1019 (1999).

If the moving party lacks a prima facie defense, the court will deny the motion to avoid a subsequent useless trial. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 583, 599 P.2d 1289 (1979); DeCaro v. Spokane County, 198 Wn. App. 638, 645, 394 P.3d 1042 (2017). To determine whether evidence supports a prima facie defense, the trial court must take the evidence and the reasonable inferences therefrom in the light most favorable to the moving party. TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies, Inc., 140 Wn. App. 191, 202, 165 P.3d 1271 (2007). In other words, the defendant demonstrates a prima facie defense by producing evidence that if later believed by the trier of fact, constitutes a defense to the claims presented. TMT Bear Creek, 140 Wn. App. at 202. Affidavits supporting motions to vacate default judgments must set out the facts constituting a defense and cannot merely state allegations and conclusions. Ha v. Signal Elec., Inc., 182 Wn. App. 436, 449, 332 P.3d 991 (2014).

Insofar as Falkowski challenged the extent of damages awarded to Murphy, we agree with the trial court that he failed to establish a prima facie defense. See Little, 160 Wn.2d at 704 ("It is not a prima facie defense to

9

damages that a defendant is surprised by the amount or that damages might have been less in a contested hearing."). But Falkowski also raised a defense to liability, claiming that he acted in self-defense and did not cause visible or serious injuries. Noting that a defendant may raise self-defense against civil claims of assault and battery and that the court cannot weigh credibility in assessing a prima facie defense, the trial court concluded that Falkowski established a "minimal prima facie defense" to liability. Therefore, the trial court weighed this factor in favor of vacating the default judgment.

But we conclude that the evidence in support of Falkowski's defense falls short of "substantial." White, 73 Wn.2d at 352. The trial court pointed to documents admitted as exhibits to observe, "[T]here appears to be no dispute that Mr. Falkowski assaulted Ms. Murphy on the night in question." The very evidence Falkowski relied on to argue that Murphy did not suffer lingering physical effects undermined his claim that his acts were defensive and resulted in no visible injuries. For instance, Falkowski expressly admitted in a text message that he "once again touched [Murphy] in anger" and described in e-mails that his conduct was " 'destructive' " and "effing horrible and I carry that burden." He neither refuted nor questioned Murphy's many references to violence, to him beating her in Belize, or to the visible bruising on her face and body when she returned from the trip. When confronted with evidence showing that the photographs depicting her injuries were for the most part taken in the hours following the alleged incident, Falkowski responded only that the "metadata" showing timing was not conclusive "to a thousand percent accuracy"

and that Murphy could have inflicted the injuries on herself. We conclude that in view of the evidence as a whole, Falkowski's declaration does not constitute substantial evidence of a prima facie defense.

Regardless of whether Falkowski presented a prima facie defense, we agree with the trial court's conclusion that he did not establish the second White factor. When the moving party's evidence supports no more than a prima facie defense, the court will scrutinize with great care the reasons for the failure to timely appear and defend. Johnson v. The Cash Store, aka Cottonwood Fin., Ltd., 116 Wn. App. 833, 842, 68 P.3d 1099 (2003); White, 73 Wn.2d at 353-54. In the absence of a strong defense on the merits, "the plausibility and excusability" of the defaulted defendant's failure to timely participate becomes the most critical, "if not dispositive," consideration. White, 73 Wn.2d at 353-54; Akhavuz v. Moody, 187 Wn. App. 526, 534, 315 P.3d 572 (2013). Courts evaluate excusable neglect on a case-by-case basis. Rosander v. Nightrunners Transp., Ltd., 147 Wn. App. 392, 406, 196 P.3d 711 (2008). The trial court has broad discretion to determine whether neglect is excusable and may make credibility determinations and weigh facts in order to resolve the issue. Rosander, 147 Wn. App. at 406.

Falkowski claims that he failed to participate in the litigation because his former attorney misled him. He points to his attorney's assurance about " 'avoided defaults' " and failure to inform him that he was required to answer the complaint and take action in order to receive pleadings by e-mail. The trial court determined, however, that neither the former attorney's reference to defaults nor

11

any other alleged omissions excused Falkowski's own failure to answer the complaint, respond to discovery, comply with court deadlines, and respond to Murphy's pleadings:

> Indeed, even if the Court accepts that Mr. Falkowski believed a default was off the table, that does not explain why he refused to participate in this case in any meaningful way until he was faced with a judgment of over $1,000,000. As our Supreme Court noted, a party's "decision not to participate does not meet the standard required" to establish excusable neglect. Little, 160 Wn.2d at 70[6]; see also Akhavuz, 178 Wn. App. at [535-36]; Rosander, 147 Wn. App. at 407. The Court finds that Mr. Falkowski's decision not to participate was willful and intentional and therefore inexcusable.

Falkowski also claimed that he would have responded if Murphy's counsel had sent pleadings to him by e-mail. The court rejected this contention as well:

> As an initial matter, Mr. Falkowski does not point to any Court Rule that permits service of various papers vie e[-]mail, nor does he explain why he did not sign-up for e[-]mail service of all documents in this case. While Mr. Falkowski complains that his prior counsel did not include his e[-]mail address on the Notice of Intent to Withdraw, Mr. Falkowski provides no explanation as to why he did not reach out to Ms. Murphy's counsel during the pendency of this case to see what was happening in the matter or let them know that he wanted to receive documents by e[-]mail. Indeed, Mr. Falkowski's implicit claim that he would have participated in this case had he only known what was going on is not supported by his own actions.

The court determined that Falkowski's claim that he had no recollection of receiving prejudgment pleadings in the mail was not credible. The court found Falkowski's assertion that he would have behaved differently had he understood the significance of the mailed pleadings was likewise implausible since he also denied receiving any documents, followed none of his former counsel's instructions, and did not avail himself of the opportunity to contact former counsel

12

with questions. We do not review a trial court's credibility determinations. Rosander, 147 Wn. App. at 407.

Falkowski argues, somewhat inconsistently, that he did in fact meaningfully participate in the case by retaining Sulkosky shortly after Murphy served him with the complaint and responding to requests for admission before his attorney withdrew. But again, Falkowski fails to acknowledge or persuasively explain his failure to take any action or obtain information about the case for more than seven months after Sulkosky withdrew in August 2018. And regardless of the trends and preferences for electronic filing and electronic service, he cites no authority that allows service by electronic means in these circumstances without action on his part. See CR 5(b)(7) (service by "electronic means" may be agreed to in writing or authorized by local court rules); LGR 30(b)(4)(B)(ii)) (a nonrepresented party "must promptly register" to receive e-service if that party e-files a document). As the court observed, Falkowski's conduct belies the assertion that he would have behaved differently if Murphy had delivered documents by e-mail.

The trial court had a tenable basis to conclude that Falkowski's failure to respond to the pleadings in this proceeding was inexcusable. We therefore need not address the remaining White factors. See Rosander, 147 Wn. App. at 409 (affirming denial of motion to vacate where defendant failed to present a prima facie defense and failed to show excusable neglect without addressing secondary White factors); see also Brooks v. University City, Inc., 154 Wn. App. 474, 479-80, 225 P.3d 489 (2010) (affirming the trial court's refusal to set aside

an order of default where court tenably concluded the defendant failed to show excusable neglect).

Falkowski also argues that the trial court abused its discretion by expressly failing to consider the amount of the judgment. No authority supports his argument. Falkowski's citation to Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986), a case outlining factors to be weighed when the court exercises its discretion to enter a default judgment under the Federal Rules of Civil Procedure, is unavailing. This is not an appeal of the underlying default judgment and the federal procedural rules do not apply.

Although he focused on excusable neglect below, Falkowski contends on appeal that the court should have vacated the judgment because of "procedural irregularities." He points out that Murphy's declaration offered in support of her motion for a default judgment was apparently not properly filed, is missing from the trial court docket, and is not a part of the record on appeal. He also contends that the court engaged in improper ex parte contact by communicating by e-mail with only Murphy's counsel about the hearing on the motion.

Irregularities under CR 60(b)(1) are generally those relating to a failure to adhere to some prescribed rule or mode of proceeding. Lane v. Brown & Haley, 81 Wn. App. 102, 106, 912 P.2d 1040 (1996). The irregularities usually involve procedural defects unrelated to the merits that raise questions about the integrity of the proceedings. See In re Marriage of Tang, 57 Wn. App. 648, 654-55, 789 P.2d 118 (1990).

There is no dispute that Murphy provided her declaration to the court and mailed it to Falkowski. And Murphy testified at the evidentiary hearing. Falkowski did not raise any objection below, and the omission of the document from the record on appeal does not affect our ability to address Falkowski's claims on appeal. In addition, the routine and customary communication about scheduling a hearing on Murphy's motion was timely sent to Falkowski and does not constitute improper ex parte communication with the court. See RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 113 cmt. c (AM. LAW INST. 2000) ("written communication to a judicial officer with a copy sent timely to opposing parties or their lawyers is not ex parte"; ex parte prohibition applies to communications about the merits or procedural matters that will result in tactical or strategic advantage but not to "routine and customary communications for the purpose of scheduling a hearing or similar communications"). Falkowski establishes no irregularity that undermines the integrity of the proceeding.

Falkowski raises additional procedural issues pertaining to the show cause hearing on his motion to vacate. He claims the trial court abused its discretion by excluding live witness testimony. We disagree. According to the record, defense counsel merely informed the court at the hearing that "two potential witnesses," previously undisclosed, were available to testify. Counsel explained that one of the witnesses could testify that Murphy had her bicycle repaired and appeared to continue her "rigorous" training schedule after she returned from Belize. Counsel also suggested that Falkowski could testify to confirm that he subjectively understood that he had avoided the possibility of a

default judgment and that an e-mail communication from the court or plaintiff's counsel would have "gotten his attention." It is clear that while the court did not request to hear testimony on these issues, it did not deny a specific request to consider live testimony or exclude witnesses. And Falkowski did not object to the trial court deciding the motion based on the briefing, arguments, and documentary evidence submitted, including his declaration.

Falkowski also claims that the court abused its discretion by considering his potential insurance recovery. We disagree. Falkowski fails to mention that the court's question about the issue during the show cause hearing arose from the evidence he submitted indicating the involvement of his prior attorney's liability insurance carrier. His reliance on Miller v. Staton, 64 Wn.2d 837, 840, 394 P.2d 799 (1964), where defense counsel improperly suggested to the jury during closing argument in a tort case that the defendant had no liability coverage, is wholly misplaced.

Falkowski also claims that the court violated the appearance of fairness[5] by, among other things, considering only one party's testimony, weighing credibility, and reacting angrily to a joke. There is no evidence of bias. The court considered Falkowski's sworn testimony in support of his motion to vacate. The court appropriately weighed credibility to evaluate the claim of excusable neglect. And the court did not exhibit bias in reprimanding defense counsel when he made jokes related to issues that were the focus of counsels' legal arguments.

---

[5] Under the appearance of fairness doctrine, a decision-maker must not only be fair in substance, but in appearance as well. Harris v. Hornbaker, 98 Wn.2d 650, 658, 658 P.2d 1219 (1983).

Rather, it appears that the court simply reacted to a lack of decorum in the courtroom and apparent disregard for the gravity of the issues before the court.

We affirm denial of the motion to vacate the default judgment.

Brennan, J

WE CONCUR:

Verellen, J                    Appelwick, J.